# CHARLESTON.

NATIONAL VALLEY BANK OF STAUNTON *v.* HOUSTON *et al.*

Submitted March 10, 1909.   Decided November 23, 1909.

1. ASSUMPSIT—*Action of—Pleading—Declaration.*

   A declaration in *assumpsit* on a promise in writing to pay money, which distinctly alleges fulfillment of the only condition on which such payment was made to depend, is good on demurrer.   (p. 339).

2. APPEAL AND ERROR.—*Rulings on Special Plea—Review.*

   Though an exception of defendant to a ruling on a special plea tendered be not contained in any order entered in the court below, yet if it be shown in the certificate of evidence, or in any other part of the record, the defendant may avail himself here of any error in rejecting such plea.   (p. 339).

3. PLEADING—*Plea of Non Est Factum—Verification.*

   A special plea, alleging want of complete delivery of the bond sued on, and that the condition of the delivery thereof had never been complied with, and concluding with an "*et sic non est factum*," is substantially a plea of *non est factum*, and if not verified, as required by section 3859, Code 1906, is properly rejected.   (p. 343).

4. SAME—*Failure of Consideration—Verification.*

   A plea which is substantially a plea of failure of consideration, or fraud in the procurement of the contract sued on, by section 3891, Code 1906, requires verification, without which it is properly rejected.   (p. 342).

5. SAME—*Special Plea—Replication.*

   A general replication to such a special plea is all that is required to put in issue all the material matters of defense therein pleaded, and a special reply is not required.   (p. 344).

6. PROPERTY—*Evidence of Ownership.*

   In a suit involving the question of financial responsibility of some of the defendants, at the time they signed the contract sued on, the property books of the county are proper evidence, not of perfect title to the property, but as tending to show claim of right and title by such defendants to the property charged to them for taxation, and as pertinent to the issue.   (p. 346).

7. APPEAL AND ERROR—*Harmless Error—Exclusion of Evidence.*

   Error in sustaining objections to questions propounded a witness will not be available here, unless the record affimatively shows that the complaining party has been prejudiced thereby.

8.  SUBSCRIPTIONS—*Construction—Mutuality.*

    A contract under seal to pay to another, as committee, a certain sum of money, the proceeds whereof were to be expended so far as might be necessary in making a location survey for a railroad, and in paying other necessary expenses attending the same, is not void for want of mutality.  (p. 348).

9.  SAME—*Binding Effect.*

    Though such contract be treated as a mere subscription to the object specified, if the subscription be acceded to, on the terms on which it is. made, and labor or money be expended on the faith thereof, the party making the subscription is bound thereby.  (p. 348).

10.  APPEAL AND ERROR—*Bill of Exceptions—Certification by Judge—Impeachment.*

    Indorsements made by the clerk on the back of a bill of exceptions or certificate of evidence will not be sufficient to impeach the verity of the certificate of the judge to such bill of exceptions, or the vacation order of the judge certifying such bill of exception to the clerk.  (p. 348).

Error to Circuit Court, Monroe County.

Action by the National Valley Bank of Staunton against A. C. Houston and others.  Judgment for plaintiff, and certain defendants bring error.

                          .    *Affirmed.*

*John W. Arbuckle,* for plaintiffs in error.

*Rowan & Meadows,* for defendant in error.

MILLER, PRESIDENT:

The declaration in *assumpsit* contains the common counts, and two special counts.  The instrument counted upon in the special counts is signed and sealed by A. C. Houston and fifty three other persons and firms, defendants, as follows: "Twelve months after date, with interest from date, we promise and bind ourselves to pay J. D. Logan, President of Com. of Monroe Central R. R. on survey of Rights of Way, five thousand dollars, value received.  It is agreed first, that this obligation is of no force until fifty or more responsible persons have signed the same.  2nd.  That the proceeds of this note are to be expended in making a location survey as far as may be necessary, and paying other necessary expenses attending the

same, for the Monroe Central Railroad. 3rd. That the signers of this obligation are to be reimbursed so far as they may pay any amount due thereon from funds which may be raised by the County of Monroe or any district therein, for the purposes aforesaid by taxation or otherwise; and that the name of the obligee and blank dates shall be filled as soon as known. Witness the following signatures and seals, this 8th day of Oct., 1904". The declaration was twice amended, and, as amended, the first of the special counts charges in general terms that defendants made their said writing obligatory, sealed with their seals, and dated as aforesaid, whereby they bound themselves, and promised to pay J. D. Logan, President &c., five thousand dollars for value received, twelve months after the date thereof, with interest from date; that afterwards, to-wit, on the .... day of ........ 1904, for value received, the same being wholly unpaid, the said Logan, President &c., assigned and transferred the said writing obligatory to plaintiff; that when the same became due and payable according to the tenor and effect thereof, it was not paid, and still remains unpaid, by reason whereof defendants became indebted and liable to plaintiff in the said sum of five thousand dollars, and, being so indebted, they, in consideration thereof, undertook and faithfully promised to pay the same to plaintiff on request; and that, although often so requested, they have not, nor hath either of them, paid plaintiff the said sum or any part thereof, but still neglect and refuse so to do, to the damage, &c. The second special count sets out said writing obligatory in full, and, in addition to the averments in said first count, alleges that fifty or more responsible persons signed said writing as required by the condition thereof, and that the proceeds thereof were expended in making a location survey as was necessary, and in paying other necessary expenses attending the same for the said Monroe Central Railroad, as provided thereby.

The plaintiffs in error, C. P. Bradley and twenty three others, demurred to the declaration as finally amended, which was overruled; and they then tendered four special pleas in writing, to the filing of which plaintiff objected, and, the objection being sustained and the pleas rejected, C. W. Bradley and W. D. Riley, two of said plaintiffs in error, each tendered a

special plea alleging fraud in the procurement of said writing, which pleas, though objected to, were ordered filed. Upon the trial of the issues joined on the plea of *non-assumpsit,* and upon said special pleas filed, the plaintiff obtained a verdict and judgment for $1104.00. As requested by plaintiffs in error the court submitted to the jury the following: "Were there 50 or more of the persons who signed the writing dated October 8th, 1904, and on which this suit was brought solvent and responsible for the amount of said obligation at the time it was executed," and to which the jury responded: "In our opinion there were."

Some twelve errors are assigned in the petition of plaintiffs in error; not all of them are relied on in argument here. We will consider those only which appear to us to be meritorious. First, the demurrer to the declaration. The common counts are concededly good. The first special count we think is also good. It alleges a contract under seal importing a consideration, and containing a promise to pay money, a breach thereof, and an assignment thereof to plaintiff, for a valuable consideration, etc. *Oyer* of the writing obligatory was not craved, and it was not thus made a part of the record so as to render this count bad on demurrer for failure to allege fulfillment of the conditions on which the promise was made to depend. The second special count in which the entire contract is pleaded distinctly alleges fulfillment of the only conditions on which payment was made to depend. This is all that is required. *Kern* v. *Zeigler,* 13 W. Va. 707, 3 Syl. No other defects in the declaration are pointed out in briefs or argument, and, perceiving no defects therein, we must hold the declaration good on demurrer.

Next, did the court err in rejecting the four special pleas tendered by some of the plaintiffs in error? The order rejecting them shows they were simply tendered; there was no order filing them, or formally making them part of the record, and the order making the tender thereof shows no exception to the action of the court rejecting them. Plaintiffs in error rely on the bill of exceptions or certificate of evidence, which recites not only the tender of the pleas and the rejection thereof, but also that "defendants again excepted". Are these recitals in the order and certificate of evidence sufficient

to make the pleas part of the record? In *White* v. *Toncray*, 9 Leigh, 347, Judge Tucker, for the court, ruled that: "Pleas tendered by a defendant in an action at law, and rejected by the court, are not a part of the record, unless made so by bill of exceptions to the rejection of them, or by an order of the court that they shall be made so." And, at page 351 of the opinion, says: "The defendant desired to make them so, but the court, for good reasons doubtless, refused to permit them to be filed. They were of course not filed. Though placed among the papers by the party or the clerk, they were not *filed*, and were of course no part of the record." This decision, as is said by Judge GREEN in *Sweeney* v. *Baker*, 13 W. Va. 158, 212, was very properly approved by subsequent decisions in Virginia, and in this State in *Hart* v. *B. & O. R. R. Co.*, 6 W. Va. 336; but in the former case Judge GREEN, at pages 212-214, criticises the reasoning of Judge TUCKER, and Judge HAYMOND for adopting it in *Hart* v. *Railroad Company*. In *Sweeney* v. *Baker*, the rejected pleas, or the exceptions to their rejection, though not made part of the record by any formal bill of exceptions, were made so by orders of record, and in such cases, syllabus twelve says, the appellate court will review the action of the lower court in rejecting such pleas though no formal bill of exceptions was taken thereto. In *Hart* v. *Railroad Company*, the rejected plea had then already been filed, and had thereby previously been made a part of the record, and Judge GREEN in the former case says this decision was not properly based on the fact that no bill of exceptions was filed, but on the fact, that no bill of exceptions was filed and no entry made on the record book that the defendants objected to the rejection of its pleas, and he adds: "The decision is simply, that this objection must appear to have been made in the court below, either by bill of exceptions or otherwise, and this did not appear in any manner." The fact of the actual filing of a plea is emphasized by Judge Tucker in *White* v. *Toncray;* and in disposing of the case then in hand Judge GREEN, in *Sweeney* v. *Baker*, at pages 214-215, further says: "Assuming, therefore, that under the decision in *While* v. *Toncray,* * * * * * a court may order a rejected plea to be made a part of the record, by a simple order to that effect on its order book, and then permit it to further appear by the order,

that the defendants excepted to its rejection, and that the plea
and exception were then both parts of the record, I am of the
opinion, that this has been substantially done in this case. It
is true, there is no formal entry, that the rejected pleas shall
be made a part of the record; still when the court makes the
order, that the pleas are rejected, and the rejection of them is
excepted to by the defendants, such entry could be made by
the court, only to give to the defendants the power, to have re-
viewed the decision of the court in rejecting the pleas. * * * * *
And, it does seem to me, we would be too technical, if an entry,
which the court, who made it, considered and must have con-
sidered as the equivalent of an order directing, the rejected
plea to be made a part of the record, should be disregarded,
simply because it did not say in express words, the rejected plea
is ordered to be made a part of the record." See, also, *King
v. Burdett,* 12 W. Va. 688, 694. The effect of this decision
therefore is that an order rejecting such pleas when tendered,
if the order shows an exception by defendant to the ruling of
the court, is the equivalent of an order making the pleas ten-
dered parts of the record and the action of the court below
thereon subject to review by an appellate court on writ of er-
ror.

In the case we have in hand, however, we have no order of
the court showing any exception by defendant to the ruling of
the court rejecting the pleas. Is the recital thereof in the bill
of exceptions sufficient? In *B. & O. R. R. Co.* v. *Bitner,* 15 W.
Va. 455, 461, the defendant tendered a plea of set-off, ac-
companied by a bill of particulars, which was rejected, and
the defendant took a bill of exceptions reciting the plea, but not
the bill of particulars; and to the argument presented that,
because the bill of particulars accompanying the plea was not
also formally made a part of the record by being included
therein, the bill of exceptions was defective and could not be
considered, the Court, at page 460-1 says:   "General pleas,
such as not guilty, *non-assumpsit,* conditions performed, &c.,
are in our practice constantly pleaded orally, and a note only
of their being filed is made on the record, such pleas being
very rarely written out. This Court, as well as the court of
appeals of Virginia, constantly hold this mode of filing such
pleas is sufficient. If such a plea was rejected by a court, it

would be no more necessary to set it forth at length in the bill of exceptions, than it is necessary to write it out when it is filed. The plea of payment and set off are among the pleas which are thus habitually pleaded orally; and the bill of particulars, which the statute requires to be filed with them, shows the real character and amount of the payment and sets-off. And as the bill of exceptions shows the bill of particulars of sets-off filed with the plea, this Court will assume, just as it would had it been noted without being written out, that it was formally drawn claiming the off-sets named in the bill of particulars of off-sets filed with it." Certainly it is made to appear from the record by this bill of exception, conceding it to be part of the record, that defendants excepted to the ruling of the court rejecting said pleas, and we have held that, if it appears from any part of the record that the point on the ruling of the court has been saved before the jury retires, this is sufficient. *Wickes* v. *B. & O. R. R. Co.,* 14 W. Va. 157; *Perry* v. *Horn,* 22 W. Va. 381; *Bank* v. *Showacre,* 26 W. Va. 48; *Hughes* v. *Frum,* 41 W. Va., 445, 452; *Kay* v. *Glade C. & R. R. Co.,* 47 W. Va. 467. These decisions we think support the proposition that if it be shown in a formal bill of exceptions, or in the certificate of the evidence and proceedings on the trial, that exception was taken to the ruling of the court rejecting a special plea tendered, this Court may review such ruling on writ of error, though no order of the court shows such exception.

We may then next consider the pleas themselves, the rejection of which is complained of. First it is urged against them that they are not verified by affidavit, as required by section 3891, Code, 1906, and were properly rejected for this reason alone. If these pleas be of the class or classes to which that section relates, this objection would seem to be good. The chapter of the Code, in which said section is found relates to "payments and set-off," and authorizes a defendant "in any action on a contract," to "file a plea, alleging any such failure in the consideration" thereof, "or fraud in its procurement * * * * * * * as would entitle him, either to recover damages at law from the plaintiff, or the person under whom the plaintiff claims, or to relief in equity, in whole or in part, against the obligation of the contract; or * * * * * * * * ; and in either

case alleging the amount to which he is entitled by reason of the matters contained in the plea." Plea number one amounts merely to a negation of the condition on which by the terms of the contract itself, as pleaded, payment was made to depend, namely, that fifty or more responsible persons had not signed the same, and, therefore, not defendants deed. Plea number two avers, in substance: That the said writing was given by defendants as the price and for the purchase of a certain location survey for a certain railroad, to be known as the Monroe Central Railroad, to be constructed from the town of Ronceverte, Greenbrier County, through the County of Monroe, by way of Rock Camp to Luric, on the Norfolk and Western Railroad, in Giles County, Virginia, of the value of $5,000.00, and for no other consideration; and that upon the execution and delivery thereof, the said Logan, President, undertook, promised and agreed with defendants and each of them, to have said location survey made as aforesaid, but failed therein, and that said Logan, President, before the transfer and assignment of said bond to plaintiff, and the plaintiff since then, have wholly failed to have said location survey made as aforesaid and caused a map and profile thereof to be filed in the office of the Secretary of State, etc., and still fail and refuse to do so, wherefore the consideration for said bond has wholly failed, and defendants have sustained damages to the amount of plaintiff's demand. Plea number three is in effect and substance that said bond was procured from defendants by said Logan, President, by fraud and circumvention, by falsely and fraudulently representing the same to be not a bond, but a petition to the county court of Monroe county, praying said court to appropriate money and subscribe money for said location survey, etc., and that said court would grant the prayer thereof if fifty property owners of said Monroe county would sign said petition; wherefore, it is further averred, said bond is void in law, and defendants damaged $5,000.00 etc. Plea number four is not found in the record and cannot be considered.

We do not think plea number one fails under section 3891. It is neither in form or substance a plea of failure of consideration, or a plea alleging fraud in the procurement of the contract. It is, properly speaking, what it purports to be in its conclusion, a plea of *non est factum.* Evidence of want of com-

plete delivery, as an escrow, and that the condition of the delivery has never been complied with, is admissible under such plea. *Am. B. H. O. Mach. Co. v. Burlack*, 35 W. Va. 647; Hogg's Pl. and Forms, 180. But section 3859, Code 1906, says that no plea of *non est factum* shall be received unless it be verified by affidavit. This plea was therefore properly rejected for want of verification. Moreover, the second special count of the declaration pleads the contract in full and alleges fulfillment of the condition thereof, thereby putting the burden of proof on plaintiff; and the issue tendered by the plea we think was clearly presented by the general issue, and, as we have seen, the jury on special interrogatory propounded by defendant responded thereto, wherefore, defendant could not have been prejudiced by rejection of the plea.

Pleas two and three are in form at least, if not in substance, pleas of failure of consideration, and fraud in the procurement of the contract. Whether substantially good, it is unnecessary for us to say, for under said section 3891, they were properly rejected for want of verification. As to plea number two it pleads matter of contract not covered by the writing sued upon, and we think quite inconsistent with and variant from the terms thereof. Could evidence be received under such a plea to vary or contradict the very terms of the written instrument? We hardly think so. As to plea number three, it avers in effect that defendants were deceived by the alleged representations of Logan, President, that the contract sued on was a petition, and not their promise to pay money. It is not averred that defendants were ignorant and could not read the contract, or that the paper was falsely read to them. Certainly the paper does not purport to be a petition; it is a plain promise to pay on the condition named. Defendants could not have been deceived thereby. We do not think this plea presented a substantial issue.

Another point of error made, which we will consider, is that no issues were joined on the special pleas of defendants Riley and Broyles. The record shows general replications by plaintiff thereto; but it is claimed this is insufficient, that these pleas should have been specially replied to. In this defendants are clearly in error. A general replication to such a special plea puts in issue the material matters thereof and this is all

that is required to make up the issue. Hogg's Pl. and Forms 218, sections 282, 283, and authorities cited.

Other points of error presented relate to the admission and rejection of evidence. First, it is urged that the admission in evidence on behalf of plaintiff of the record of the chancery cause of *Logan* v. *Ballard,* and of the law case of plaintiff against Houston and others, constituted error. The record of this case shows that the record of *Logan* v. *Ballard* was offered in evidence by and admitted on behalf of defendants, and, of course, they cannot be heard to complain thereof in this Court. And, so far as the record of the law case is concerned, it consisted simply of the declaration and the judgment in favor of plaintiff against Houston and others on the note given by them to plaintiff and to which the contract sued on in this case had been assigned as collateral. We do not see that this record was very material one way or the other. It did show the balance due plaintiff on the note sued on, and the balance for which plaintiff held the contract here invalid as collateral, but, of course, it was not conclusive on the defendants to this suit, not parties to that suit. But, as there was ample evidence outside of this record to show the balance due plaintiff, no error prejudicial to defendants resulted from its introduction in evidence.

It is next assigned as error that J. D. Logan, who assigned the contract sued on to plaintiff, was permitted to testify in its behalf. We can perceive of no valid legal objection to the competency of his evidence, and none is pointed out. His evidence was clearly rendered competent by the provisions of section 3945, Code 1906.

Another ground of error urged is that the court below permitted counsel for plaintiff to ask the witness Logan whether he had been authorized by the people who signed the paper sued on to negotiate it for the purpose of obtaining a loan of money on it, and subsequently sustained objections by plaintiff's counsel to the questions propounded to the witnesses Chewning and Johnson, by defendants' counsel, whether they had authorized Logan to negotiate a loan on the paper sued on. Logan's answer to the question propounded then was: "The paper on its face shows for what it was executed, and I used it for that purpose, and got the money." We see nothing in this answer

to the prejudice of the defendant. It does not appear from the record what the answers of the witnesses Chewning and Johnson to the questions propounded them would have been, or what was proposed to be proven by them, and we cannot see that defendants were prejudiced by the ruling of the court. But let us assume that the witnesses had been permit'ed to answer, and had said that they had not authorized Logan to negotiate a loan on the paper sued on, what effect could their answers have had on the issues before the jury? The paper on its face provides "that the proceeds of this note are to be expended in making a location survey, etc." How could this provision of the contract have availed anything if it did not of itself authorize negotiation thereof? If this provision does not expressly authorize negotiation, it plainly implies such authority, and can. it be presumed the witnesses would have undertaken to contradict these plain terms of their contract? If they had done so, the court would have properly excluded their answers.

The next point of error is, that the court permitted plaintiff, over objection, to introduce in evidence, on the question of the financial responsibility of some of the defendants, the assessor's property books for 1904. The record shows that the objections of defendants extended only to the use of these books as evidence of title, and not to their use as showing the assessment; and as the plaintiff in offering these books distinctly stated that they were offered for the sole purpose of showing the defendants assessed with certain property, and not as evidence of title, we do not think the defendants should now be heard to complain of their admission for the purposes intended.

But it is next urged upon us that, after having admitted said property books in evidence showing some of defendants assessed with certain property in 1904, the court sustained objections to sundry questions propounded defendants, Broyles, Riley, Dunn, Ellis and Ballard as to whether or not they were respectively owners in 1904, or in the fall of that year, of any property, or of the particular property assessed to them respectively. The record here again fails to show what the answer of these witnesses would have been; nor does the record show what was proposed to be proven by the witnesses in relation to their property, and it does not, therefore, clearly

appear that defendants were prejudiced by the rulings of the court. Moreover, whatever be the truth respecting the financial responsibility of these particular defendants, at the time they signed the contract in suit by the terms thereof it required but fifty responsible persons to make it binding at all. The jury found as a fact that fifty or more responsible persons had signed the paper, and we think this finding justified by the evidence, regardless of the financial standing or ability of these particular 'defendants. Wherefore, for this reason, they were not prejudiced by the ruling of the court.

Still another point of error urged is that the court below sustained the several objections of plaintiff to questions propounded defendants Chewning, Smith, Dunn and Bradley, as to how their signatures were obtained to the paper sued on, and as to what representations were made to them at the time and by whom. Again, the record fails to show what the answers of these witnesses would have been, or what was proposed to be proven by the witnesses, and how, we ask again, can we say defendants were prejudiced by these rulings of the court? Besides, as is suggested in the brief of plaintiffs' counsel, no plea of these defendants put in issue any question of fraud in the procurement of the contract, so as to render pertinent their evidence of fraudulent procurement, if that was its purpose, for it must be remembered that the action here is on a sealed instrument, fraud in the procurement of which it seems could not have been pleaded at common law, and may not under the statute be given in evidence under the general issue. *Columbia Acc. Ass'n.* v. *Rockey,* 93 Va. 684 (25 S. E. 1009, 1010). Indeed the question has been stoutly contested in Virginia, at least, whether, since the statute, such matter could be given in evidence under the general issue in an action on any promise, express or implied. Barton and Minor question such practice. 1 Barton's Law Pract. 491; 4 Minor's Inst. (3rd Ed.) 770, 798. But in actions on simple contracts this Court has followed the rule that fraud in the procurement thereof may in actions thereon be given in evidence under the general issue. *Dillon Beeb's Son* v. *Eakle,* 43 W. Va. 502, 512.

Another point made is that there was want of mutuality in the engagement—want of consideration for the alleged promise

of defendants. But we do not think the point well founded in law or fact. In the first place, the contract, being under seal, imported a consideration; and in the case of a sealed instrument, if want of consideration is relied on, as in the case of fraud in its procurement, it must be set up by special plea, duly verified, as required by statute. In the next place, the evidence clearly shows that defendants got all they contracted for, namely, that the proceeds of the note should be expended in making a location survey for the Monroe Central Railroad; that Logan and others accepted the contract in good faith and expended the proceeds of the note in making said location survey. Treating the contract of the defendants as mere subscriptions to that object, sufficient consideration is shown for their promise. "If a subscription be acceded to on the terms in which it is made, and labor or money expended on the faith thereof, the party making the subscription is bound thereby". *Galt's Ex'or* v. *Swain,* 9 Grat. 633, 636, citing Story on Contracts, section 453; 24 Am. & Eng. Ency. Law, (1st Ed.) 326.

Lastly, it is said on behalf of plaintiffs in error, that the judgment below against them should be set aside, because the same is also against T. A. McNeer, a non-resident, not served with process, and who, it is claimed, did not appear and submit himself to the jurisdiction of the court. While the record shows no service of process on T. A. McNeer, nor any special appearance by him, nevertheless the orders of the court of July 9, 1906, October 4, 1906 and of January 11, 1907, show general appearances of defendants by counsel without exception, the latter order showing a general plea of non-assignment by them, and issue thereon, so that a very serious question is presented, whether in law the said McNeer is not bound by the appearance in his behalf, and judgment against him. But he is not here contesting the judgment against him, and certainly his co-defendants, the plaintiffs in error, have no right to complain thereof.

Another interesting question respecting the bill of exceptions has been presented by the defendant in error, plaintiff below. It is affirmed that this bill of exceptions was not sign-

ed and certified by the Judge in time to make it a part of the record. But, according to the certificate of the Judge, the bill of exceptions appears to have been certified by him within thirty days after adjournment of the term, and the order certifying it to the clerk bears the same date. But the clerk has copied into the record endorsements made by him on the back of the bill of exceptions, to the effect that on February 9, 1907, the same was received by him from the hands of R. L. Clark, attorney for plaintiff and filed in his office; and that on February 20, 1907, he received the same from Hon. I. C. Herndon, Judge, it having been sent him February 15, 1907, the second time, by' direction of defendants counsel for the purpose of having him sign said bill of exceptions, he having signed the order directed to the clerk as of February 6, 1907, but had failed to sign said bill of exceptions prior to February 15, 1907. It is claimed that these memorandums of the clerk are sufficient to impeach the record and certificates made by the judge, precluding the Court from .considering the same on this writ of error. We can not accede to this proposition. The certificate of the judge to the bill of exceptions, and the vacation order certifying the same to the clerk, both show affirmatively that the bill was tendered, signed and filed in time. This is all that is required. 2 Cyc. 1049, and cases cited, including our cases of *Bank* v. *Showacre,* 26 W. Va. 48; *Griffith* v. *Corrothers,* 42 W. Va.' 59, and *Adkins* v. *Ins. Co.* 45 W. Va. 384. And the rule is that "When the recitals of the record as made up by the clerk, and the statements in the bill of exceptions, duly signed and sealed by the Judge, are not in harmony, the real truth will be taken to be stated by the latter." 3 Cyc. 152-3, citing in note 3, *Merritt* v. *Gill,* 59 Ga. 459, also 3 Cyc. 154-5.

We, are therefore of opinion to affirm the judgment below.

*Affirmed.*