# CHARLESTON.

## STATE v. EMMA HOUCHINS

## (No. 5733.)

**Submitted September 14, 1926.   Decided September 21, 1926.**

1. CRIMINAL LAW—*Jurisdiction of Criminal Court of Raleigh County to Try Indictment for Murder Was Not Ousted by Certiorari From Circuit Court to Bring Before it Rulings on Special Plea, Consideration of Which Was Prohibited by Writ of Supreme Court of Appeals, Although Circuit Court Had Not, When Case Was Called for Trial, Recertified it Back to Criminal Court.*

   The jurisdiction of the Criminal Court of Raleigh County to try an indictment for murder returned by a grand jury was not ousted by a writ of certiorari from the circuit court, awarded without jurisdiction, to bring the case before it on rulings of the criminal court on a special plea filed by defendant, from consideration of which, for want of such jurisdiction, it was previously prohibited by a peremptory writ of this court, notwithstanding the circuit court had not, when the case was called for trial, re-certified the same back to the criminal court.   (p. 171.)

   (Criminal Law, 17 C. J. § 3384 [Anno].)

2. SAME—*Special Plea Filed by Order of Court, Though Subsequently Rejected or Stricken Out, and Court's Ruling Thereon Excepted to, Becomes Part of Record for Review on Writ fo Error.*

   A special plea not only tendered but actually filed by an order of court, though subsequently rejected or stricken out, and the ruling of the court thereon excepted to, thereby becomes a part of the record for the purpose of review by the appellate court on writ of error by the party adversely affected by the ruling of the lower court.   (p. 172.)

   (Criminal Law, 17 C. J. § 3415.)

3. SAME—*Plea of Autrefois Acquit to Indictment for Murder, Alleging Acquittal on Indictment for Killing Another Person at Same Time, and Vouching Record of Such Trial, and Alleging Killing of Both Persons Was One Act, With Single Volition and in Self-defense, Presents Good Defense, Although Two Shots Resulted Accidentally in Death of Two Bystanders.*

   Upon an indictment for the murder of one person, a plea of autrefois acquit, which with complete and accurate detail

alleges that upon an indictment for the killing of another
person committed at the same time he had been by the ver-
dict and judgment of the same court previously adjudged not
guilty thereof, and vouches the record of the former trial,
and alleges that the killing of both persons, while it may have
been the result of two shots fired at the same instant and in
rapid succession, was but one act, with but a single volition,
and when attacked by another with a deadly weapon, and
solely in self-defense, and when he had reason to believe and
did believe that he was in danger of death or great bodily
harm at the hands of his assailant, presents a good defense
of prior jeopardy and acquittal of the same offense, notwith-
standing the two shots resulted accidentally in the death of
two bystanders.     (p. 173.)

(Criminal Law, 17 C. J. § 485.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
part of syllabi.)

Error to Circuit Court, Raleigh County.

Emma Houchins was convicted of voluntary manslaughter,
and she brings error.

*Reversed; new trial awarded.*

*McGinnis & McGinnis* and *C. M. Ward,* for plaintiff in
error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,*
Assistant Attorney General, for the State.

MILLER, JUDGE:

Upon an indictment for the murder of Lewis Romans,
returned by the grand jury in the Criminal Court of Raleigh
County, defendant, on her trial before the jury, was found
guilty, not of first degree murder, nor of second degree mur-
der, but of voluntary manslaughter, as charged in the indict-
ment, upon which verdict the criminal court, on November 13,
1925, adjudged that she be confined in the penitentiary for
the period of five years.

Upon a writ of error to this judgment the circuit court of
said county, as it appears from the record, was of opinion
that there was no error in the judgment of the criminal court,
but that it was plainly right, and by its judgment, pronounced

on March 27, 1926, the same was affirmed, to which judgment we awarded the present writ or error.

In the criminal court, its jurisdiction to try the case was challenged by a special plea, with special replication of the State thereto, which plea, on issue joined thereon, was overruled, and the jurisdiction sustained. The correctness of this ruling of the trial court is the first proposition which we are called upon to consider. The proposition covered by this plea is that, at the time the defendant was put upon trial in the criminal court, the case was pending in the circuit court on certiorari by it to the criminal court, wherefore the trial court was without jurisdiction thereof for the purpose of the trial. This proposition, as the criminal court properly decided, was not well founded. In *State* v. *Emma Houchins,* 96 W. Va. 375, we decided that the criminal court was without jurisdiction to certify to us the correctness of its ruling on the plea of autrefois acquit, tendered by the defendant, and presently to be considered on the present writ of error, and that we were likewise without jurisdiction to consider or respond to the question certified; and we declined to do so. This decision was announced on May 6, 1924. Later, on December 22, 1924, upon the petition of *Ashworth, prosecuting attorney of Raleigh County* v. *Hon. John H. Hatcher, Judge of the Circuit Court of Raleigh County,* 98 W. Va. 323, we awarded a peremptory writ of prohibition, prohibiting the respondent from further considering the case upon the writ of certiorari awarded, holding that the circuit court was wholly without jurisdiction by certiorari to remove a case pending before an inferior tribunal for the sole purpose of reviewing the latter's ruling on demurrer to pleadings, and that we had jurisdiction to restrain the circuit court, as was done, by writ of prohibition.

The trial of the case was begun and continued in the criminal court on November 11, 1925, subsequently to the rulings and decisions given here in the two cases referred to. Therefore, we conclude on the facts appearing in the record that, as the circuit court was wholly without jurisdiction to bring before it by certiorari the ruling of the criminal court as

proposed, the case was never in fact or law pending in the circuit court on said writ, nor the jurisdiction of the criminal court to try the case ousted by the certiorari proceedings. For these reasons we negative the point of want of jurisdiction.

The next proposition relied on for reversal is that the court below—the trial court—erred in rejecting defendant's special plea of autrefois acquit, the question which the criminal court without jurisdiction attempted to certify to us, already alluded to. The attorney general denies our jurisdiction to consider the questions covered by the several bills of exception certified in the record, upon the general ground that these bills of exceptions were not made up and signed within the time required by law by the judge of the trial court, wherefore they can not be considered upon this hearing. As the record discloses, the trial in the criminal court took place before the Hon. A. D. Preston, judge of that court. The several bills of exceptions, including No. 6, covering said special plea of autrefois acquit, were signed, not by Judge Preston, the regular judge, but by the Hon. M. L. Painter, special judge of said court. Wherefore, it is contended by the attorney general, we can not consider any of the questions presented by said bills of exceptions.

We find it unnecessary, however, to respond to this general comprehensive proposition, for in our judgment the sufficiency of this plea of autrefois acquit is fairly presented by the record independently of the bills of exceptions purporting to embody it, and that the judgment of the lower court must be reversed for error committed in rejecting it. The record shows by an order of the criminal court, entered on January 28, 1924, on which day Judge Preston, the regular judge of the court, was sitting, that the defendant not only *tendered* the plea in question, but that it was in fact filed, and marked for identification, "State of West Virginia vs. Emma Houchins, Special Plea No. 1;" and that upon the State's demurrer thereto, the demurrer was sustained, and that defendant excepted. While this plea, by an endorsement on the back of it, appears to have been again filed on November 11, 1925,

we think it is sufficiently identified by the record and by its
subject matter to make it a part of the record without any
formal bill of exceptions. While the order of November 11,
1925, the date on which the trial began, simply recites a
tender of the plea and its rejection, manifestly it was over-
looked that the plea had previously been tendered and filed,
and the ruling of the court on the demurrer thereto excepted
to. We think that the defendant is entitled to the benefit of
the prior record, if not the subsequent record and the bill of
exceptions signed by the special judge; for we decided in
*National Valley Bank* v. *Houston,* 66 W. Va. 336, reviewing
prior cases, that while an order rejecting a special plea ten-
dered will not make the plea a part of the record for review
on appellate process, nevertheless an order showing not only
a tender but the filing of the plea, and the subsequent rejec-
tion thereof, and exception to the ruling, does make the plea
a part of the record, and which may be considered on writ
of error without a more formal bill of exceptions specifically
making the plea a part of the record.

The record, therefore, we think is sufficient to bring before
us the question of the sufficiency of said special plea of
autrefois acquit, and the correctness or incorrectness of the
ruling of the trial court in rejecting it on demurrer or mo-
tion. Omitting all formal parts, the substance of this plea is
that on the same day and by the same grand jury that re-
turned the present indictment charging the defendant with
the murder of Lewis Romans, to-wit, on the 13th day of
October, 1923, another indictment was returned against her
for the murder of Emma Carter, on which latter indictment
she was, on November 5, 1923, set to the bar of the court, and
upon the reading of the indictment to her, she interposed
her plea of not guilty, on which plea the State joined issue;
and that subsequently, to-wit, on November 14, 1923, she was
put upon her trial for the alleged offense, before a jury of
twelve men returned, impaneled and sworn as provided by
law to well and truly try the issue joined upon said indict-
ment and plea, and that hearing all the evidence introduced
on behalf of the State and on her behalf, and the instructions

of the court, the jury returned, and on November 15, 1923, returned their verdict, finding the defendant not guilty and that she be acquitted and go hence without day, and which judgment, the plea avers, remained in full force and effect, as by the record thereof still remaining in said court will more fully appear.

The plea then further avers that the felony of which defendant was so indicted and acquitted, and of which she was then indicted and about to be put on trial, were one and the same, and not different felonies; that on June 28, 1923, defendant was at the village of McAlpin, in Raleigh County, and at the place where she then and there had the right to be, and that one Anna Romans, then and there made an assault upon her and violently seized her at and about the head and neck, under such circumstances that she then and there believed, and had good reason to believe, she was in great danger of death and great bodily harm at the hands of her said assailant, and that while so assaulted as affirmed, and under the circumstances, fears and beliefs aforesaid, she fired in her lawful self-defense two shots in rapid succession at the said Anna Romans, for the sole purpose, volition and intent of protecting herself against the assaults then being made upon her by the said Anna Romans; that each of said shots were fired by her under the same degree of provocation and accompanied by the same apprehension of danger at the hands of the said Anna Romans, and that each of said shots were fired in rapid succession, at the same time, at the same person, to-wit, the said Anna Romans, and no other person, and in the single act of escaping the then apprehended danger at the hands of the said Anna Romans; that neither of said shots were fired at the said Lewis Romans, but both of said shots were fired at the said Anna Romans, though neither of said shots struck the said Anna Romans, but one of the said shots accidentally struck and took effect in the body of the said Emma Carter, of which she, the said Emma Carter, immediately thereafter died, and the other of said shots accidentally struck and took effect in the body of Lewis Romans, from which he, the said Lewis Romans, immediately died.

It is further alleged that upon the trial of defendant, at the October 1923 term of the said criminal court, upon the indictment charging her with the murder of Emma Carter, the State to maintain the issue on its part did charge that upon the whole evidence introduced on the trial, present and rely upon the theory to the jury that the defendant did, without justification, extenuating circumstances or excuse, fire both of said shots at the said Anna Romans, with the intent her, the said Anna Romans, then and there, feloniously, wilfully, maliciously, deliberately, and unlawfully to slay, kill and murder, and that the defendant while so shooting at the said Anna Romans, missed her and struck the said Lewis Romans and Emma Carter, from which they immediately died; and the plea avers that to maintain the issues arising upon said indictment and plea, on her part, upon the trial aforesaid for the shooting of the said Emma Carter, defendant alleged and presented to the jury the theory upon the whole evidence introduced upon the trial, that she did fire each of the shots aforesaid at the said Anna Romans, and that they were so fired at her at a time and under such circumstances where and when she was so being assaulted by the said Anna Romans, in such manner and under such circumstances that she then and there believed, and had good reason to believe she was in danger of death or great bodily harm at the hands of the said Anna Romans, and that she had the lawful right to fire each of said shots at said Anna Romans in her lawful defense.

The plea further avers that all the facts and circumstances surrounding defendant at the time each of the said shots were fired, were submitted to the jury by the evidence introduced upon the trial, upon the issues arising upon the said indictment and plea, whereby all matters of law and fact were lawfully and legally submitted to and tried and determined by the jury, and as a result whereof, defendant was lawfully and legally acquitted, and her plea of self-defense in the firing of said shots was then and there sustained by the jury, and that the shooting of the said Emma Carter and of the said Lewis Romans constituted but one and the same shooting, and were

so clearly connected in time and circumstances, as well as in intent and motive, that the incident of the shooting of the one can not be truly related without the incident of the shooting of the other be also related and fully described in all material respects; wherefore, she prays that she ought not to be further prosecuted for the murder of the said Lewis Romans as aforesaid; and in support of her plea she profers the record of her said former acquittal.

The question then is, does the plea in facts and circumstances present a good defense to the present prosecution? We think that the facts pleaded bring the case within what is regarded as an exception to the general rule, that the conviction or acquittal of one charged with the murder of, or assault upon, one person, is not a bar to his subsequent prosecution for the murder of, or assault upon, another person at the same time. This general rule, thus stated, and the numerous decisions sustaining it, will be found collated in a note to *State* v. *Corbett,* (S. C.), 20 A. L. R. 341, among the cases cited being our case of *State* v. *Evans,* 33 W. Va. 417, and the Virginia case of *Vaughan* v. *Commonwealth,* (1821), 2 Va. Cas. 273. It will be observed that the plea avers that the killing of Emma Carter, of which defendant was acquitted, and of Lewis Romans, of which she is charged in the present indictment, were the result, not of a shot fired at the one and then a shot fired at the other, though done at the same time, in the same transaction, but of two shots fired in rapid succession, at one and the same instant, and with but the single volition to kill Anna Romans, her assailant and solely in self-defense. The exception to the general rule, which we think is sustained by abundant authority, is stated in the note to *State* v. *Corbett, supra,* at page 346, as follows, that when the killing of two or more persons is the result of the same act, the same volition, but one offense is committed, and a conviction or acquittal of the killing of the one may be pleaded as a defense in a subsequent prosecution for the killing of the other. We think the averments of the plea bring this case within the well recognized exception to the general rule. The authorities are very clear on the proposition where the double killing is

the result of one shot or stroke directed by a single act or volition towards one person. This exception is recognized, but not as controlling involved in our case of *State* v. *Evans,* *supra,* page 419, where a supposed case is used as an illustration of its proper application. The cases supporting the rule relied on to support the plea are: *Moss* v. *State,* (Ala.), 75 So. 179; *Cook* v. *State,* (Tex.), 63 S. W. 872; *Spannell* v. *State,* 203 S. W. 357; *Ruffin* v. *State,* (Ga.), 114 S. E. 581; *State* v. *Mowser,* (N. J.), 106 Atl. 416; *State* v. *Rosa,* 72 N. J. L. 462. We also add *State* v. *Colgate,* 31 Kans. 511, and will review some other cases bearing on the sufficiency or insufficiency of such pleas. In *Moss* v. *State,* it is admitted that two distinct offenses may be committed in the same transaction, but that case holds that if a person by the act of defending himself fires four shots as one continuing act, with the same purpose and intent, and at the same person, and in so doing accidentally kills an innocent by-stander, he can only be tried for the one offense. In *Cook* v. *State,* the Texas court distinguishes that case from *Kelly* v. *State,* 62 S. W. 915, involving the killing of two brothers, where it was held that the plea in that case could not be sustained because it showed that the killing was not one act or volition on the part of the defendant, but that there were two shots, two separate and distinct volitions, two acts, two volitions, contemporaneous; but the court held that where there is one act, one intent, one volition, as shown by the case then at bar, defendant could not be convicted upon an act, intent or volition for which he had been previously acquitted. And affirming the rule of this case, the same court, in *Spannell* v. *State, supra,* held that when two persons are killed or injured in one transaction, the fact that more than one shot was fired will not, as a matter of law, render it insusceptible of proof that they were both killed or injured by one act, in a legal sense, when the shots are fired with one volition. In *Ruffin* v. *State,* one of the points of decision was that: "Where A. shoots at B. with the intent to kill B., and, while so shooting at B., accidentally shoots and kills C., and is tried for homicide of B. and acquitted, such acquittal is a bar to a prosecution of A. for the killing of C."

In *State* v. *Mowser,* decided in 1919, applying the principles previously announced in *State* v. *Cooper,* 13 N. J. L. 361, and also in *State* v. *Rosa, supra,* the New Jersey court decided that in view of the Crimes Act, section 106, providing that any person who kills another in attempting to commit robbery shall be guilty of murder, upon an indictment for the robbery, and plea of guilty, the judgment thereon might be pleaded by the defendant on a subsequent indictment for the murder of the person robbed, when defendant's accomplice killed him to accomplish the robbery. In *State* v. *Rosa* the plea was held bad because it failed to show that both homicides were produced by the same act, the essential feature in a plea of this nature, the court adding, "for it is the character of the act, not the results which flow from it, which determines the question of the guilt or innocence of the person who does it." The case here is clearly distinguishable from a case where by two separate acts or blows, two volitions, one kills first one person and then another, for while the blows may be administered in the same transaction, they may be disconnected, not only in time, and constitute separate and distinct volitions, and two different and distinct offenses, and a conviction of the one will not bar a prosecution of the other. *Gunter* v. *State,* 111 Ala. 23, 56 Am. St. Rep. 17. In *Bell* v. *State,* 120 Ark. 530, the plea involved did not present the question as to whether the murder of two persons by the same act would constitute but one offense, wherefore the trial court, it was held, committed no error in denying defendant's plea of former conviction; and the proof in that case showed that the killings were not the result of one shot, but were the result of entirely different shots; wherefore this case is not opposed to the exception to the general rule above stated. In *Jones* v. *State,* 61 Ark. 88, the plea of autrefois convict, which alleged that the murder of the one for which defendant was on trial was so clearly connected in point of time with the act of killing of another for which he had been convicted as to render it impossible to separate the evidence relating to each, was held bad on demurrer because it failed to state that both victims were killed by the same act and volition. The plea before

us in this case is not wanting in such averments. In *People* v. *Ochotski,* 115 Mich. 601, it was held that an acquittal of an assault upon one person is not a bar to a trial for an assault upon another in the same affray, when the injury was inflicted by separate blows, and instigated by a different volition. This difference in volition is what distinguishes the case at bar from the Michigan case. Here the plea, while admitting two shots, avers that they were fired at the same person with but one volition. In *Commonwealth* v. *Browning,* 146 Ky. 770, the opinion may seem opposed to the exception to the general rule, but the decision in that case was moot. The trial court had sustained the plea, but as there was an acquittal of the defendant, the judgment could not be disturbed; so the question on the plea not necessary to the decision affirming the judgment. We think the illustrations of the court in that case, one an act of poisoning, and the other of throwing a bomb, are inapt, for there the offender would clearly be charged with distinct and different volitions to do injury to all who might be injured, and be guilty of as many offenses, quite a different case from the one presented here. Such cases as the ones supposed are clearly within the rule applied in the prior case of *Keeton* v. *Commonwealth,* 92 Ky. 522, where it is held that: ''When one presents a pistol at two persons at the same time and compels both to surrender their property at once he is, if guilty at all, guilty of two separate acts of robbery, and may be separately indicted and tried for the two offenses.'' In an interesting opinion by Staples, Circuit Judge, in the noted case of *Commonwealth* v. *Claude Allen,* for conspiracy to murder Judge Massie and others in Wythe County, Virginia, reported in 18 Virginia Law Register, (1912), the plea of former jeopardy alleged that the two offenses ''are one and the same *act or crime* because if done at all both of said alleged crimes were brought about by and are the result of the same act, impulse or endeavor, at the same time, at the same place, and as a result of one and the same instantaneous and immediate transaction, and are one and the same crime.''. And referring to the language of Mr. Justice Harlan in *Burton* v. *United States,* 202 U. S. 344,

that: "The plea will be vicious if the offence charged * * * be perfectly distinct in point of law, however nearly they may be connected in fact," the court properly held the plea bad. And referring to *Gunter* v. *State,* (Ala.), *supra,* Judge Staples said of the distinction drawn in that case between a killing of two by one shot and of two by successive shots, that the distinction required remarkable refinement of reasoning and is predicated upon no sound or necessary principles of law; and further that "to say that two shots fired in quick succession by the same hand, with the same intention, impelled by the same motive, but resulting in the death of two persons constitute two crimes, whereas one single shot fired with the same single intent, impelled by the same single motive, and accomplishing the same result, constitutes but one crime, is to measure crime solely by quantity of action regardless of character of such action or of intention or result." Judge Staples' decision may not be regarded as in accord with our decision in this case, but his denial of the distinction in the two cases supposed is quite pertinent to the case at hand. In an elaborate note to *People* v. *McDaniels,* (Cal.), 92 Am. St. Rep. 81, 121, Judge Freeman says of the rule that several acts or blows may constitute but one offense, that it must be specially confined to the case where the same act occasions both injuries or deaths, that the volition must be identical. And at page 123, he says, citing the authorities, that: "In order, as we have seen, that one prosecution can be said to be for the same offense as another, it must be for the same 'act and offense,' or for the same offense in law and in fact," and that, "this indentity is, therefore, to a certain extent a mixed one of law and of fact." And, following the same decisions he further says: "To determine whether the offenses are of the same species in law, * * * perhaps as good a criterion as any is whether or not the facts alleged in the one indictment would, if proved under the other, warrant a conviction. If not, the two offenses can hardly be said to be the same in point of law."

The averments of the plea now in question, we think make out a clear case of identity of the two alleged offenses, the

one of which defendant was acquitted, and the one charged in the present indictment. Whether they are or not is a fact to be tried by the jury.

Having reached the conclusion to reverse the judgment for rejecting the plea, we are not required to determine the other questions covered by the attorney general's brief, viz., whether the several bills of exceptions found in the record were lawfully certified so as to make them a part of the record.

The judgment will be reversed, and the defendant awarded a new trial.

*Reversed; new trial awarded.*