324 So.2d 830 (1975)
STATE of Louisiana
v.
Clyde CAIN.
No. 57106.
Supreme Court of Louisiana.
December 22, 1975.
*831 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Ralph Whalen, Asst. Dist. Attys., for plaintiff-appellant.
John Unsworth, New Orleans, Mary Olive Pierson, McKernan, Beychok, Cooper, Screen & Pierson, Baton Rouge, for defendant-appellee.
SUMMERS, Justice.
Donald Ruiz and William Moore were murdered on November 21, 1973. The Orleans Parish grand jury returned an indictment charging Clyde Cain and William Burman with the first degree murder of both Ruiz and Moore.
Although indicted for both murders, Cain and Burman were tried on October 23, 1974 solely for the murder of Ruiz. The jury returned a general verdict of not guilty, acquitting the defendants of the murder of Ruiz.
Subsequently, on October 25, 1974, the District Attorney for the Parish of Orleans moved to dismiss or nolle prosequi the indictment charging the defendants with the murder of Moore. The motion was granted by the trial judge. The matter was again presented to the grand jury and Cain was indicted on October 21, 1975 for the murder of Moore. (Burman is dead).
Defendant Cain, through counsel, then filed a motion to quash the indictment alleging that he had been tried and acquitted of the murder of Ruiz on October 24, 1974. Testimony in that trial, he asserted, was to the effect that both Ruiz and Moore were shot to death at the same time on November 21, 1973, at approximately 4:30 p. m. Therefore, the motion continues, the only controverted issue at the trial was the identity of the alleged murderers, and, it is implied, the verdict of not guilty necessarily rejected the sufficiency and credibility of the State's evidence on that issue. In fact, the jury's verdict read, "not guilty due to insufficient evidence."
*832 So, defendant contends, the doctrine of collateral estoppel prevents the retrial of that question, for the indictment upon which such a trial would be based would bring about a violation of that doctrine. The result would be to subject Cain to double jeopardy contrary to the protection guaranteed by the Fifth Amendment of the United States Constitution.
At the hearing on the motion, the State's attorney conceded the correctness of the allegations of the motion to quash. All parties agreed that the State's main witness testified that he saw two persons enter the house where Ruiz and Moore were murdered, and a short time later both defendants left the house. The next morning the maid found the bodies of Ruiz and Moore in the house.
The trial judge granted the motion to quash, and the State has appealed.
The Fifth Amendment to the Federal Constitution declares: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."[1] The concept of double jeopardy embodied in the clause is designed, not only to prohibit double jeopardy, but to prevent double punishment as well, forbidding that an accused be penalized more severely than the law provides, through the device of finding that he has committed several violations of substantive law where only one exists.
On the other hand, the restriction on multiple prosecutions is designed to implement several procedural objectives. One of these is to protect the defendant and the public from the expense of prolonged and unnecessary litigation resulting from retrial of cases already adjudicated.
Another is to prevent the use of several proceedings to try questions of law and fact which logically make up but one case. Still another objective is to safeguard the accused from excessive harassment and the stigma of repeated criminal prosecutions; he should not be made to "run the gauntlet" again.
Louisiana, like the United States Supreme Court and most American jurisdictions, has expanded the determination of "same offense" in the jeopardy clause into a "same evidence" test. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); State v. Roberts, 152 La. 283, 93 So. 95 (1922). Briefly, so far as relevant here, "the test to be applied to determine whether there are two offenses or only one is whether each provision [i. e., each charge] requires proof of an additional fact which the other does not." Blockburger v. United States, supra at 304, 52 S.Ct. at 182.
The Fifth Amendment guarantee against double jeopardy, as understood and interpreted by the United States Supreme Court, has been held to be enforceable against the States through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). This case, therefore, is to be decided upon principles established by the decisions of the United States Supreme Court.
In 1916 Mr. Justice Holmes delivered the opinion of the Court in United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161, and announced for the first time that the doctrine of collateral estoppel then in use in civil litigation was applicable to federal criminal prosecutions. It was his opinion that the doctrine represented a *833 fundamental principle of justice in the civil law which was not done away with by the Fifth Amendment.
Although collateral estoppel then became an integral part of federal criminal law, it was not elevated to the dimension of a federal constitutional right binding upon the States until 1970 by the decision in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. There "collateral estoppel" was said to be an
"... awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties."
In Ashe v. Swenson six men engaged in a poker game were robbed by three or four masked gunmen. Six weeks after having been acquitted in a state trial for the robbery of one of the players, defendant was tried for the robbery of another and convicted. The witnesses in the two trials were for the most part the same and the State's evidence establishing the facts of the robbery was uncontradicted, but the testimony identifying the defendant as one of the robbers was substantially stronger at the second trial.
The question decided there was whether, after a jury determined by its verdict that a defendant was not one of several robbers, the State could constitutionally hale him before a new jury to litigate that issue again. In holding that the State could not, the Court said,
"Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery ... in the hope that a different jury might find that evidence more convincing."
The fact that the second trial related to another victim of the same robbery was found to be constitutionally no different. For the name of the victim, in the circumstances of the second case, had no bearing whatever upon the issue of whether the defendant was one of the robbers.
The situation is the same in the case at bar. The fact that this second charge against Cain is for the murder of Moore and not Ruiz has no bearing upon whether he was one of the two men seen at the house when the two murders were committed.
In view of the concession of the State's attorney that the allegations of the motion to quash were correct, this Court is precluded from reviewing the evidence at Cain's trial for the murder of Ruiz to ascertain whether the only controverted issue at the trial was the identity of the alleged murders.
However, the State argues that the grand jury originally returned separate indictments for the murder of each victim, Ruiz and Moore, the murder of Ruiz being a separate and distinct offense from the murder of Moore. This was required by Louisiana law, the argument goes, because Article 493 of the Code of Criminal Procedure prohibits charging more than one offense in any indictment. At that stage of the proceeding, according to the State, defendants Cain and Burman were authorized by Article 706 of the Code of Criminal Procedure to move for the consolidation of the two charges into one trial. And, since they had, but did not exercise, the right to consolidation, Cain waived the right under the Fifth and Fourteenth Amendments to claim that the later attempt to prosecute would place him in second jeopardy.
Legions of cases hold, the State argues, there is a waiver of the constitutional protection against double jeopardy when a defendant successfully moves for a mistrial, motion in arrest of judgment, new trial or *834 appeal. While the exercise of each of these remedies depends upon the affirmative assertion of a right by the defense, the State argues there is no rational basis for reaching a different result when the defendant possesses the only right to obtain joinder of all offenses for trial and elects not to exercise that right. When the defense does not assert the right to joinder, the State contends, it should be deemed to have waived the constitutional guarantee against double jeopardy.
While the State's contention that the defendant had a right to move for joinder of the two indictments prior to the first trial is arguably well-founded, still that in itself does not mean that defendant waived his right to claim double jeopardy. La.Code Crim.Proc. art. 706; La.R.S. 14:30.
In Louisiana's Constitution double jeopardy is waived by the granting of a motion for a new trial, a motion in arrest of judgment or where a mistrial occurs. A waiver occurs in these instances because the Constitution so declares in explicit terms. No constitutional or statutory authority has been found supporting a waiver under the circumstances of this case, and the State has referred to none.
Since the doctrine of collateral estoppel has now been superimposed upon the double jeopardy clause of the Fifth Amendment and elevated to the dignity of a constitiutional right we cannot presume acquiescence in the loss of such a right. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Such a waiver is not to be lightly inferred, Smith v. United States, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949), and it must be voluntarily and knowingly made. Gibbs v. Burke, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686 (1949). There is no evidence to support any intention to waive double jeopardy here.
Failure to exercise the right to demand a joinder of offenses should not furnish grounds to imply a waiver of double jeopardy for the additional reason that joinder of offenses may often involve serious consequences to the accused. For one thing, the joinder of a multiplicity of offenses charged and the simultaneous trial of those offenses may cause prejudice to the accused. And a jury is likely to use evidence adduced in support of one charge to convict the accused of another charge not independently or adequately proved. The jury, from the very nature of the human intellect, may unconsciously permit the two sets of facts to merge or blend together. Separately tried, the evidence in each case might clearly be insufficient to convict the defendant, but tried together, a jury may erroneously convict by supplying an element in one crime from the other.
To give the accused the choice of either moving for such joinder or being considered to have waived double jeopardy would be to place him in an untenable predicament to say the least.
For the reasons assigned, the ruling of the trial judge granting the motion to quash is sustained.
NOTES
[1] The Louisiana Constitution of 1921 contains this provision: "No person shall be twice put in jeopardy of life or liberty for the same offense, except on his own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained." La.Const. art. I, § 9 (1921). Similarly, the Constitution of 1974 contains this guarantee: "No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained." La.Const. art. I, § 15 (1974).