STATE *ex rel.* LEO JOHNSON

*v.*

THE HON. JOHN M. HAMILTON, *Judge, etc.*

(No. 14704)

Decided April 28, 1980.

*Jay Montgomery Brown* for relator.

*Chauncey H. Browning*, Attorney General, *Thomas N. Trent*, Assistant Attorney General, *George I. Sponaugle*, Prosecuting Attorney, *George I. Sponaugle, II*, Assistant Prosecuting Attorney, for respondent.

NEELY, CHIEF JUSTICE:

In the case of *State ex rel. Dowdy v. Robinson*, ___W.Va.___, 257 S.E.2d 167 (1979) we adopted "both the 'same evidence' test and the 'same transaction' test for determining whether the 'same offense' is involved for double jeopardy purposes with an accompanying rule that whichever test affords the defendant the greater protection against potential unconstitutional double jeopardy must be applied." We explained the "same transaction" test by illustration and pointed out that if a defendant were arrested for both kidnapping and robbing a victim at the same time then, under the "same

transaction" test, the two offenses would be the "same offense" for double jeopardy purposes. We qualified that statement, however, by indicating that the "same transaction" test will not mandate one prosecution for crimes growing out of different occurrences even though closely related in time, and we used the example of a person committing one murder at 6:00 p.m. and an unrelated second murder at 6:30 p.m. The Court then said:

> If a person were to murder two people at the same time a closer case would be presented, and whether it were double jeopardy to have separate prosecutions would depend upon the nature of the evidence presented. For example, if the defense were self-defense on the grounds that the two victims had attacked the defendant, then it would seem unfair to try the defendant twice for essentially the same transaction, but we leave that question to a future day. (*Dowdy v. Robinson, supra,* ___W.Va.___, 257 S.E.2d at 170.)

We now have before use exactly the hypothetical case which was presented in our discussion in *Dowdy* and we are compelled to answer the question. On March 6, 1979, Leo Johnson was indicted by the Grand Jury of Pendleton County on two separate indictments for the murder of Roy Lee Huffman and Earl Huffman. On April 26, 1979 Leo Johnson was tried and found guilty of the first degree murder of Roy Lee Huffman with a recommendation of mercy. Roy Lee Huffman was the son of Earl Huffman and the shooting incident arose out of a running dispute between the defendant, Leo Johnson, and Earl Huffman over a right-of-way.

On March 3, 1979, at approximately 7:00 a.m., Earl Huffman and his two sons, Roy Lee and John were clearing brush on the disputed property, with the eldest Huffman using a chain saw. Leo Johnson approached and an argument ensued between Johnson and Earl Huffman. John Paul Huffman testified at the first trial that he saw Leo Johnson first shoot his father, Earl, shoot at him, and shoot twice at his brother, Roy Lee.

According to the representations of counsel, Leo Johnson claims that he fired at Earl Huffman only in self defense when he was attacked by Earl Huffman wielding the chain saw; however, Leo Johnson did not take the witness stand to testify in his own behalf at the first trial. Relying upon the case of *State ex rel. Dowdy v. Robinson, supra,* the relator sought a writ of prohibition from this Court to prohibit a second trial for the murder of Earl Huffman on the grounds of double jeopardy.

## I

Initially it is important to point out that the first trial for the killing of Roy Lee Huffman occurred two months before our opinion in *Dowdy v. Robinson* was handed down. Furthermore, counsel in this Court stipulated that the relator did not move for a joint trial on the two separate indictments but merely requested from the prosecutor an indication as to which indictment would be tried first. The Court infers from the arguments of counsel and the stipulation in open court that it was assumed that under prior practice the State had a right to try the defendant for each separate alleged murder and, prior to *Dowdy, supra,* such a procedure would have been perfectly acceptable under West Virginia law. *State v. Daniel,* 144 W.Va. 551, 109 S.E.2d 32 (1959); *Lawrence v. Commonwealth,* 181 Va. 582, 26 S.E.2d 54 (1943); cf. *State v. Houchins,* 102 W.Va. 169, 134 S.E. 740 (1926).

Our discussion in the *Dowdy* case concerning proper rules for implementing the *W. Va. Const.'s* prohibition against double jeopardy indicates that our selection of the "same transaction" test and "same evidence" test, depending upon which is more favorable to the defendant, is a matter of policy which goes to the appropriate procedure for securing a fundamental right. We even implied that the *Dowdy* case was not to be given retroactive application when we said in syllabus point one: "In West Virginia the term 'same offense' [sic] as used in the double jeopardy provision of *W. Va. Const.,* art. 3, § 5 *shall* be defined. . ." *Dowdy v. Robinson, supra,* ___W.Va. at ___, 257 S.E.2d at 168. (emphasis supplied

by Court). While we have frequently disparaged distinctions between procedural law and substantive law when the former is used to achieve results which are forbidden by the latter, *Pnakovich v. State Workmen's Compensation Comm'r,* ___W.Va.___, 259 S.E.2d 127 (1979), nonetheless, there are occasions when the distinction is justified.

*Dowdy v. Robinson, supra* was intended to establish an orderly, prospective procedure for avoiding multiple prosecutions for successive criminal acts arising out of the same general criminal transaction. Both because *Dowdy v. Robinson* had not been decided at the time the first prosecution now under consideration occurred and because there was no motion by the defendant to have the two cases tried together, we conclude that to make *Dowdy* retroactive in the case before us would have the effect of charging the State with knowledge of a procedural change in the law which they could not have foreseen.

In determining whether to apply a change in the decisional law retroactively, the fundamental principle to which we have looked is reliance. *Pnakovich v. State Workmen's Compensation Comm'r,* ___ W.Va. ___, 259 S.E.2d 127 (1979); *Bradley v. Appalachian Power Co.,* ___ W.Va. ___, 256 S.E.2d 879 (1979). Since a person or the State should be able to plan the course of civil or criminal litigation with reasonable reliance on current procedural rules, the reliance of the prosecution is an important element in considering whether to apply today's rule retroactively. Therefore since there is no substantial impairment of the truth finding function, *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L. Ed. 2d 388 (1971), we conclude that this is not a change in decisional law requiring retroactive application. In this particular instance the defendant must be tried for the other murder. A defendant tried before *Dowdy* cannot be relieved by fortune of punishment for each separate offense. Consequently, notwithstanding the opportunity which this case affords the Court to determine the proper prospective procedure for handling a case in which

two people are killed at the same time, the writ of prohibition prayed for in this case is denied.

## II

The *Dowdy* case itself may have given rise to legitimate confusion because it was not sufficiently explicit in its analysis of double jeopardy. The constitutional prohibition in *W. Va. Const.*, Art. III, sec. 5 against double jeopardy has two elements: first, a protection against multiple trials for the "same offense" *Ex Parte Bornee*, 76 W.Va. 360, 85 S.E. 529 (1915); second, protection against multiple punishments for the "same offense." *Conner v. Griffith*, ___ W.Va. ___, 238 S.E.2d 529 (1977); and, *State v. Kiger*, 103 W.Va. 55, 136 S.E. 607 (1927). It is important to distinguish which principle of double jeopardy protection is involved when a defendant makes a general plea of double jeopardy. The "same transaction" test which we adopted in *Dowdy*, *supra* goes to the issue of multiple trials for the "same offense" but it does not preclude separate punishments for separate crimes.

In the *Dowdy* case we discussed a hypothetical case in which an individual committed armed robbery and kidnapping at the same time, but we did not say, nor did we imply, that both robbery and kidnapping could not be punished as separate, distinct crimes. We did say, however, that if both offenses arose out of the "same transaction" they must be tried together unless the defendant moved for a severance. In a case involving murders, such as the one currently under consideration, we hold that in the future a person must be tried for both alleged murders in the same trial unless he moves for a severance, but that he may be punished for both murders separately because they are separate and distinct offenses.

It should be obvious that there are lesser included offenses which are part of greater crimes, so that malicious wounding is an integral part of murder, petty larceny may be an integral part of armed robbery, and attempted larceny may be an integral part of burglary. It has always been the law that a person cannot be

punished for both a lesser included offense and the greater crime when the elements of the first are necessarily included in the elements of the second. *State v. Cross*, 44 W.Va. 315, 29 S.E. 527 (1898); *Myers v. Commonwealth*, 148 Va. 725, 138 S.E. 483 (1927); cf. *State v. Wisman*, 93 W.Va. 183, 116 S.E. 698 (1923). That is certainly not the case, however, with cases involving two separate murders, robbery and kidnapping, or burglary and rape.

The State asserts in its brief that it does not believe that an indictment can be drawn which contains two separate counts of murder. Our research of the law discloses in great detail that a multi-count indictment setting forth in separate counts each separate and distinct offense arising out of the same transaction is perfectly permissible. *State v. Cutlip*, 131 W.Va. 141, 46 S.E.2d 454 (1948); *State v. Masters*, 106 W.Va. 46, 144 S.E. 718 (1928); *State v. Tomlin*, 86 W.Va. 300, 103 S.E. 110 (1920). The Court can envisage occasions where a trial for multiple but distinct offenses arising out of the same transaction might, indeed, prejudice the defendant in his defense of any one of the alleged offenses. In such a circumstance the defendant may move for a severance, but that contemplates an automatic waiver of a subsequent plea of double jeopardy.

## III

Our policy regarding multiple trials for offenses arising from the same transaction emanates from a recognition that it has occasionally been the practice to divide one criminal transaction into as many distinct offenses as possible in order to provide the State with multiple opportunities to secure a conviction. *State v. Taylor*, 130 W.Va. 74, 42 S.E.2d 549 (1947); and *State v. Watson*, 99 W.Va. 34, 127 S.E. 637 (1925). Frequently in the trial of one offense the defendant is capable of establishing a defense, such as alibi, that would prove him innocent of all other offenses; however, he is often put to the time and expense of defending against the other charges as well. A plea of *autrefois acquit*, the criminal law equivalent of the civil law's doctrine of *res judicata*, *Connelly v.*

*Director of Public Prosecutions*, [1964] A.C. 1254 (*see* the opinion of Lord Devlin at 1356) is not an effective protection against vexatious litigation in criminal trials because most criminal trials are decided by a general verdict which makes it difficult to decide which discrete issues were determined by the jury. The procedure of either multiple count indictments or separate indictments tried simultaneously provide the defendant with an opportunity to make his defense once and thus spare himself multiple trials. Based upon the common law doctrine of *autrefois convict*, the English courts have adopted the "same transaction test" as a rule of orderly criminal procedure for exactly the same policy reasons which we enunciate today notwithstanding that they are not compelled to do so by any equivalent of our own double jeopardy clause. *Connelly, supra.*

For the reasons assigned above the writ of prohibition for which the petitioner prays is denied.

*Writ denied.*

MILLER, JUSTICE, *concurring:*

While I concur in the result reached by the majority, that Leo Johnson is not entitled to the double jeopardy bar, I am in complete disagreement with the legal reasoning.

The majority continues the same irrationality that it started in *State ex rel. Dowdy v. Robinson*, ____ W.Va. ____, 257 S.E.2d 167 (1979). In my dissent in *Dowdy*, I attempted to point out the illogic of the majority's view where double jeopardy is asserted because of a break in the initial trial having nothing to do with a factual determination in the defendant's favor.

The majority now recognizes the inherent weakness of *Dowdy* when it states: "The *Dowdy* case itself may have given rise to legitimate confusion because it was not sufficiently explicit in its analysis of double jeopardy." [Majority Opinion at 5]. Confusion is, however, compounded with its current analysis of double jeopardy.

To state, as does the majority, that Article III, Section 5 of the West Virginia Constitution, relating to double jeopardy, consists of only "two elements: first, a protection against multiple trials for the 'same offense' [and] second, protection against multiple punishments for the 'same offense' " [Majority Opinion at 128], ignores Syllabus Point 1 of *Conner v. Griffith*, ___ W.Va. ___. 238 S.E.2d 529 (1977):

> "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense."

Moreover, to pronounce that "[t]he 'same transaction' test which we adopted in *Dowdy, supra* goes to the issue of multiple trials for the 'same offense' but it does not preclude separate punishments for separate crimes" [Majority Opinion at 128], is sheer legal sophistry. It ignores the fundamental question of what is the "same offense" or the "same transaction" which will constitute the single crime warranting only one trial and one punishment.

The majority does not answer this question. Instead, it devises a clever procedural paradox. A defendant who commits multiple crimes must be indicted for all of them and they are to be tried at one trial unless the defendant requests a severance, but if he moves for severance, this "contemplates an automatic waiver of a subsequent plea of double jeopardy" [Majority Opinion at 129]. No authority is cited for this extraordinary proposition.[1]

---

[1] The United States Supreme Court has taken a forceful position against applying waiver of the constitutional right to double jeopardy, holding that even a counseled guilty plea would not waive the right to subsequently raise the double jeopardy plea. *Menna v. New York*, 423 U.S. 61, 46 L. Ed. 2d 195, 96 S.Ct. 241 (1975). Most courts follow the view that because of the fundamental nature of the double jeopardy right, a claim of waiver will be closely scruti-

What the majority has attempted is to separate the concept of multiple punishments for the same offense from the concept of multiple trials for the same offense. The flaw in this effort is the failure to recognize that the core of the double jeopardy principle is the term, the "same offense."[2] If the offenses are not the same, there is no prohibition against either multiple trials or multiple punishments. It is no answer to suggest that all crimes arising out of the same criminal transaction must be tried together unless the majority is willing to say what it means by the "same criminal transaction." We are offered neither legal reasoning nor any citations, but solely the conclusionary assertion: "In a case involving murders, such as the one currently under consideration, we hold that in the future a person must be tried for both alleged murders in the same trial . . . ." [Majority Opinion at 128].

The attempted divorce of the multiple trial from the multiple punishment standard is clearly contrary to the United States Supreme Court's view of the double jeopardy standard, enunciated in *Brown v. Ohio*, 432 U.S.

nized. *See, e.g., United States v. Anderson*, 514 F.2d 583 (7th Cir. 1975); *Oksanen v. United States*, 362 F.2d 74 (8th Cir. 1966); *State v. Cain*, ___ La. ___, 324 So.2d 830 (1975); *Brice v. State*, 254 Md. 655, 255 A.2d 28 (1969). We, of course, could reduce the protection of double jeopardy under our own Constitution, but this would not be binding on the federal right. *Oregon v. Hass*, 420 U.S. 714, 43 L. Ed. 2d 570, 95 S.Ct. 1215 (1975); *Abrams v. West Virginia Racing Commission*, ___ W.Va. ___, 263 S.E.2d 103 (1980). In view of the foregoing law, to state as does the majority that the defendant's motion for severance results in a waiver of his double jeopardy claim, makes as much sense as saying that his motion for severance would waive other constitutional rights such as a trial by jury or the right to counsel.

[2] Despite some minor variations in language, Article III, Section 5 of the West Virginia Constitution, is virtually identical to its federal counterpart: "No person shall . . . be twice put in jeopardy of life or liberty for the same offence." The Fifth Amendment double jeopardy provision in the United States Constitution is: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." In *Conner v. Griffith*, ___ W.Va. ___, 238 S.E.2d 529 (1977), we found our Double Jeopardy Clause to be at least coextensive with the federal constitutional provision.

161, 166, 53 L. Ed. 2d 187, 194-95, 97 S.Ct. 2221, 2226 (1977):

> "If two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions. See In re Nielsen, 131 US 176, 187–188, 33 L Ed 118, 9 S Ct 672 (1889); cf. Gavieres v United States, 220 US 338, 55 L Ed 489, 31 S Ct 421 (1911). Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings. . . ."

*See* Westen & Drubel, *Toward a General Theory of Double Jeopardy*, 1978 S.Ct. Rev. 81, 111-122.

The present case could have been appropriately decided under conventional double jeopardy principles. It is not the first occasion we have had to deal with the problem of a double homicide where a plea of double jeopardy has been interposed. In *State v. Houchins*, 102 W.Va. 169, 134 S.E. 740 (1926), the defendant successfully asserted the plea to bar a second trial. The facts were that Houchins had been assaulted, and, believing that she was in danger of death or great bodily harm, fired two shots at her aggressor, Anna Romans. Both shots missed, but killed two bystanders, Lewis Romans and Emma Carter. Houchins was first tried for the killing of Carter and acquitted.

Subsequently, Houchins was tried for the death of Lewis Romans. Her plea of double jeopardy was rejected and she was found guilty of voluntary manslaughter. On appeal, this Court upheld the double jeopardy plea, stating:

> "We think that the facts pleaded bring the case within what is regarded as an exception to the general rule, that the conviction or acquittal of one charged with the murder of, or assault upon, one person, is not a bar to his subsequent prose-

cution for the murder of, or assault upon, another person at the same time. . . . [T]he well recognized exception to the general rule [is] where the double killing is the result of one shot or stroke directed by a single act or volition towards one person. . . ." [102 W.Va. at 176-77, 134 S.E. at 743].

In *State v. Evans*, 33 W.Va. 417, 10 S.E. 792 (1890), we recognized hypothetically an exception, but declined to apply it where the defendant shot two individuals and had been acquitted on the first homicide trial and asserted a double jeopardy plea at the second trial. In rejecting the plea, we stated:

"A case can be conceived where such a plea might be held good. For example, the engineer of a railway train might be charged with negligently and feloniously causing the death of one passenger in a wreck, and, being tried and found by the jury entirely blameless for the accident, such acquittal might, perhaps, constitute a perfect defence to a subsequent indictment for killing another passenger, who was on the same train. But this case presents no such question. The killing was the result of a separate act in each case, committed under degrees of provocation not necessarily identical, accompanied by apprehensions not necessarily the same. In fine, every element to constitute two separate offences appears on the face of the plea to exist in this case, and therefore the demurrer was properly sustained." [33 W.Va. at 419-20, 10 S.E. at 793].

*Houchins* contains an extensive review of cases from other jurisdictions and is consistent with more recent cases which have concluded that multiple homicides occurring at approximately the same time and not the result of a single act or volition may be tried, and punished, separately. *E.g., Ciucci v. Illinois*, 356 U.S. 571, 2 L. Ed. 2d 983, 78 S.Ct. 839 (1958); *People v. Carlson*, 37 Cal. App. 3d 349, 112 Cal. Rptr. 321 (1974); *State v. Richmond*, 284 So.2d 317, 320-22 (La. 1973); *State v. Johnson*, 530 S.W.2d 690, 691, 694 (Mo. 1975); *Gibson v. State*, 512

P.2d 1399 (Okla. Cr. 1973); *Scott v. State,* 490 S.W.2d 578 (Tex. Cr. App. 1973).[3]

Here, the crucial problem is to set a workable standard to determine when criminal acts are to be treated as the "same offense," a task the majority avoids. It is not possible to neatly categorize the cases in this area. It is, however, doubtful that the narrow test formulated in *The King v. Vandercomb & Abbott,* 2 Leach 708, 720, 168 Eng. Rep. 455, 461 (1796), represents the majority view among the jurisdictions. There, the focus was on the language of the indictment and unless the defendant could have been convicted on the first indictment by proof of the facts set out in the second, he could be tried on the second indictment. Most commentators have criticized this test as unduly formalistic since the language of the indictment may not be identical to the facts proved at trial.[4]

The United States Supreme Court has broadened its double jeopardy rule to focus on the elements of the crime, as stated in *Brown v. Ohio, supra:*

> "The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in Blockburger v. United States, 284 US 299, 304, 76 L Ed 306, 52 S Ct 180 (1932):
>
> > " 'The applicable rule is that where the same act or transaction constitutes a violation of

---

[3] This rule is but an application of the general doctrine that crimes against more than one person, although relatively close in time, may be separately tried and punished. *See, e.g., Davenport v. State,* 543 P.2d 1204 (Alaska 1975) (robbery); *State v. Salazar,* 24 Ariz. App. 472, 539 P.2d 946 (1975) (battery); *Cousins v. State,* 277 Md. 383, 354 A.2d 825 (1976), *cert. denied,* 429 U.S. 1027, 50 L. Ed. 2d 631, 97 S.Ct. 652 (assault); *State v. Jones,* 85 N.M. 426, 512 P.2d 1262 (Ct. App. 1973) (rape); *Smith v. State,* 517 S.W.2d 757 (Tenn. Cr. App. 1974) (narcotics selling).

[4] Carroway, *Pervasive Multiple Offense Problems—A Policy Analysis,* 94 Utah L. Rev. 105, 107-119 (1971); Lugar, *Criminal Law, Double Jeopardy and Res Judicata,* 39 Iowa L. Rev. 317 (1954); Kirchheimer, *The Act, the Offense and Double Jeopardy,* 58 Yale L.J. 513, 527-34 (1949).

two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . .'

"This test emphasizes the elements of the two crimes. 'If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . .' Iannelli v. United States, 420 US 770, 785 n 17, 43 L Ed 2d 616, 95 S Ct 1284 (1975)." [432 U.S. at 166, 53 L. Ed. 2d at 194, 97 S. Ct. at 2225-26].

Certainly, our early cases of *Evans* and *Houchins* demonstrate that we do not follow the narrow concept of merely looking to the language of the indictment. This is made more obvious in *State ex rel. Zirk v. Muntzing*, 146 W.Va. 878, 122 S.E.2d 851 (1961), where we quoted with approval the following portion of *State v. Mowser*, 92 N.J.L. 474, 106 A. 416 (Ct. of Err. & App. 1919):

"The principle to be extracted from well-considered cases is, that by the term same offence is not only meant the same offence as an entity and designated as such by legal name, but also any integral part of such offence which may subject an offender to indictment and punishment. Reg. v. Walker, 2 Moody & R. 457; Rex v. Stanton, 5 Cox C.C. 324.

"When such integral part of the principal offence is not a distinct affair, but grows out of the same transaction, then an acquittal or conviction of an offender for the lesser offence will bar a prosecution for the greater." [146 W.Va. at 888, 122 S.E.2d at 857].

*Houchins* also demonstrates that where the volitive act is unbroken, the offenses may be more likely to be considered as one. Other courts have found this concept of a single volitive act to be relevant and have expressed it as a factor in a test looking to "the basic interests of society to be vindicated or protected" and requiring an

inquiry into "the intent and conduct of the perpetrator." *Davenport v. State*, 543 P.2d 1204, 1209 (Alaska 1975). Justice Traynor makes an analogous point in *Neal v. State*, 55 Cal. 2d 11, 20, 9 Cal. Rptr. 607, 612, 357 P.2d 839, 844 (1960), *cert. denied*, 365 U.S. 823, 5 L. Ed. 2d 700, 81 S.Ct. 708 (1961):

> "A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person."

In the present case, we are not confronted with a single volitive act whereby the two victims were killed. The facts show that the defendant first shot Earl Huffman, Jr., in the neck, killing him. He then fired at John Huffman, who was standing some 16 feet to the right side of Earl Huffman, Jr. The shot nicked John Huffman's coat, knocking him to the ground. The defendant then shot at Roy Lee Huffman, who was standing some six or seven feet to the left of Earl Huffman, Jr. This last shot missed Roy Huffman, who fell to the ground, then got up and tried to run away when he was fatally shot by the defendant in the left side of the chest. The defendant was initially convicted for the murder of Roy Lee Huffman, and it is the trial for the murder of Earl Huffman, Jr., that he seeks to bar by the former jeopardy plea.[5]

---

[5] I would recognize in an appropriate case, as has the United States Supreme Court in *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S.Ct. 1189 (1970), that where there are multiple victims in the same criminal transaction and the defendant is acquitted on the merits as to one of the victims, the defendant may preclude additional trials under the concept of collateral estoppel. *See United States v. Larkin*, 605 F.2d 1360, 1369-71 (5th Cir. 1979); *State v.*

Since the majority has refused to define what it means by the "same transaction," I can only assume that its views are not too radical a departure from what I have expressed as a substantive test to determine what is the "same offense."[6]

A final point of disagreement lies in the majority treatment of the retroactivity question. It completely ignores our holding in *Adkins v. Leverette*, ____ W.Va. ____, 239 S.E.2d 496 (1977), which dealt directly with retroactivity of a double jeopardy principle. In *Adkins*, we found that a newly formed double jeopardy holding had to be made fully retroactive, since this was the rule mandated by the United States Supreme Court in *Robinson v. Neil*, 409 U.S. 505, 35 L. Ed. 2d 29, 93 S.Ct. 876 (1973), and *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S.Ct. 2072 (1969); *see also Ashe v. Swenson*, 397 U.S. 436, 437 n. 1, 25 L. Ed. 2d 469, 472, 90 S.Ct. 1189, 1191 (1970).

A final practical comment seems appropriate. I could understand engendering the confusion that attends the majority opinion and its precursor, *Dowdy*, if there were some sound policy behind it. I have not been able to detect what it is, except that a defendant should not have to withstand multiple trials. However, most defendants will prefer a separate trial rather than undergo

---

*Handley*, 585 S.W.2d 458, 463-65 (Mo. 1979); *Simon v. Commonwealth*, 258 S.E.2d 567 (Va. 1979); *cf. People v. Vaughn*, 92 Mich. App. 742, 285 N.W.2d 444 (1979).

[6] I do not envision the majority accepting the approach found in *People v. White*, 390 Mich. 245, 212 N.W.2d 222 (1973). There, after meeting the victim at a bar, the defendant followed her car to where she had parked at her girlfriend's house. When she refused the defendant's request to accompany him to Detroit, he struck her in the head with his gun and forced her into his car in which were two other men. While in Detroit, the accused raped her in the car. The defendant was indicted for kidnapping, rape and felonious assault. His initial trial was on the kidnapping charge and he was found guilty. He sought unsuccessfully to block the rape and felonious assault trials on a double jeopardy plea but, on appeal, the plea was held to be valid on the theory that the three offenses constituted a single "transaction."

the jury's reprobation on hearing the evidence surrounding the multiple crimes. Consequently, the defendant will move for a severance and thereby completely dissipate his double jeopardy plea under the majority's opinion—a true Catch-22 endeavor.