**People of the State of Illinois, Appellee, v. George Weaver, Appellant.**

Gen. No. 51,768.

First District, Second Division.

March 26, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Edward J. Downs, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

In a bench trial, defendant was found guilty of the charges of rape, burglary with intent to commit rape and aggravated battery. He was sentenced to the Illinois State Penitentiary for a term of 2 to 6 years on each

■

count, the sentences to run concurrently. Defendant on appeal contends that the evidence was insufficient to sustain a conviction for any of the crimes charged, and secondly, that the trial court erred in imposing separate sentences for offenses arising from the same conduct. A summary of the facts follows.

The complainant, unmarried and the mother of two children born out of wedlock, testified that on August 7, 1964, at about 10:00 p. m., she went to Henrietta's Lounge where the defendant bought her a glass of beer. She left there alone and went to Colby's Lounge where she had one more glass of beer. These were the only two alcoholic drinks she had during the evening. She returned home alone to her apartment at 1521 East 65th Place, in Chicago, about 3:00 a. m. on August 8th. She was awakened about 5:30 a. m. when she felt someone on her bed. She screamed loudly and struggled with her masked assailant who was choking her by holding a piece of cloth across her neck. The assailant kept asking her if she wanted to die and told her he had wanted her for a long time. The assailant's mask came off during the struggle. When she screamed again, he bit her on the nose. Prosecutrix testified that she observed her assailant closely and recognized him as the defendant. The assailant partially removed her pajamas and forced her to have sexual intercourse with him. He then told her to face the wall threatening to shoot her if she turned around before he departed. She waited a few minutes and then put her pajamas back on. At that moment a neighbor living in the basement apartment, Willard Hamilton, came to her window to ask her for a match. When he saw blood on her face he expressed concern and she told him that George Weaver had raped her. She asked the lady upstairs to call the police. She told the lady upstairs and the police upon their arrival a few minutes later that George Weaver had raped her. She testified she had

known the defendant for about two years and that they had lived in the same apartment building for one year. She further testified that he had run errands for her, had babysat for her a few times and had played cards with her. She also testified that before the police arrived she saw the screen lying on the floor of the back porch. She stated that she had checked the doors and windows before going to bed and that this screen was in place when she retired.

Officer Ronald Moore of the Chicago Police department testified that he saw the complainant at about 6:00 a. m. on August 8th. At that time she had marks on her nose and around her neck, blood on her face, and she was crying and shaking. She told him that defendant had raped her. He found the kitchen screen lying on the floor of the back porch and the kitchen window raised. He also stated that he took the complainant to Billings Hospital. It was stipulated that two vaginal smears were taken and that human spermatozoa was found on one smear.

Officer Richard O'Connell of the Chicago Police department stated that on October 25, 1964, he received information that defendant was living on the 6700 South Merrill block in Chicago. He arrested the defendant in his apartment. Defendant told him that he knew the police were looking for him for this crime but he denied commission of the offense.

Defendant testified that on August 7, 1964 he went to Henrietta's Lounge about 10:00 p. m. where he bought a drink for the complainant who was sitting with two men. He left the Lounge at about 4:30 a. m. and went with Charles Blackwell to the Zebra Lounge. After the Zebra closed at 5:30 a. m. the defendant played cards for a short time. He then went to his room, located across the street from complainant's apartment, quickly changed his clothes and went to work. After finishing work on August 8th he went to the complainant's apartment

314

building where neighbors told him that the complainant said that he had raped her and that the police were looking for him. Defendant testified that he did not commit the crime and that he had never had sexual relations with the complainant.

■ Defendant first contends that the evidence was insufficient to sustain a conviction for any of the three crimes. As to the charge of rape, defendant maintains that the State did not prove that the act of intercourse was against the will of the prosecutrix. We do not agree. She testified that she was choked, bitten, threatened with death and overpowered by a masked invader of her home. Witnesses observed the marks and blood on her face and neck, and testified that she was shaking and crying. We cannot comprehend what greater struggle she could be expected to make by way of resistance. Further, the conduct of both parties after the crime clearly indicates that consent was not given. The prosecutrix made immediate complaint of rape against defendant to neighbors and to the police. Meanwhile, defendant fled the neighborhood and was not apprehended for nearly three months. There was sufficient evidence to prove the rape.

■ As to the charges of burglary, complainant testified that the screen of her kitchen window was in place at the time of her retirement. The police officer and she testified that the screen was lying on the floor of the back porch and the kitchen window was raised after the crime. She also testified that during the assault defendant stated that he had wanted her for a long time. There was ample evidence of unauthorized entry and also of the felonious intent on the part of defendant, and it was sufficient to sustain the conviction for burglary.

Because of our holding as to defendant's second point, it is not necessary for us to consider the sufficiency of the evidence regarding aggravated battery.

Defendant next contends that the imposition of separate sentences was error since all of the offenses charged

315

to the defendant arose from the same conduct. Section 1–7(m) of the Criminal Code (Ill Rev Stats, c 38) provides that consecutive or concurrent sentences may be imposed "when a person shall have been convicted of two or more offenses which did not result from the same conduct." The Committee Comments to section 1–7(m) state that if the offenses resulted from the same conduct the defendant may not be sentenced on both, either concurrently or consecutively.

Section 2–4 of the Criminal Code defines conduct as "an act or a series of acts, and the accompanying mental state." The Committee Comment states that the word "conduct" is used in the sense of "the same transaction" as discussed in People v. Schlenger, 13 Ill2d 63, 147 NE2d 316 (1958).

 It seems evident under the facts of the instant case that the aggravated battery and rape resulted from the same conduct. The imposition of separate sentences for these two crimes was improper, and the conviction for the lesser crime of aggravated battery must be reversed. People v. Schlenger, supra; People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299 (1963).

 A more difficult question is presented as to whether the offenses of rape and burglary with intent to commit rape arose from the same conduct. In People v. Ritchie, 66 Ill App2d 302, 213 NE2d 651 (1966), the Appellate Court, Fourth District, under facts and sentencing quite similar to the instant case, affirmed the rape conviction but reversed the conviction for burglary with intent to commit rape, holding that if separate offenses arise from the same conduct defendant may not be sentenced on both, either concurrently or consecutively, citing People v. Golson, 32 Ill2d 398, 207 NE2d 68 (1965). Defendant unsuccessfully appealed the affirmance of his rape conviction to the Illinois Supreme Court. People v. Ritchie, 36 Ill2d 392, 222 NE2d 479 (1967). The State attempted to cross appeal from the Appellate

Court decision reversing the burglary conviction. While holding that the State did not have the right to appeal from the Appellate Court decision, the Supreme Court stated:

> "The State convincingly argues that the principle set forth in the cited cases is not applicable; that the crimes there charged arose out of a single act, for instance, rape and incest involving the same person, and armed robbery and grand larceny involving the same money, whereas here there are two separate and distinct acts giving rise to separate and distinct substantive offenses."

We hold that the crimes of rape and burglary in the case at bar are separate and distinct offenses not arising from the same course of conduct, but from two separate and distinct acts. That this is the proper conclusion seems apparent in view of the Committee Comment that the word "conduct" is to be used in the sense of "same transaction" as discussed in the Schlenger case. The Schlenger case involved one act, the taking of money from one person. In order to find that the two crimes in the case at bar amounted to one transaction, it would be necessary to decide that any crime committed by defendant after entry into complainant's apartment would be part of a single course of conduct. We do not believe that such a construction of section 1–7 (m) of the Code is proper.

The instant case is distinguishable from People ex rel. Starks v. Frye, 39 Ill2d 119, 233 NE2d 413 (1968) wherein our Supreme Court ruled that the trial court erred in imposing consecutive sentences for two charges of reckless homicide arising out of the same conduct. There, the two charges of reckless homicide arose out of the same act, defendant having driven his auto with criminal recklessness in colliding with another auto in which two occupants were killed.

While we agree with the principle that two punishments cannot be imposed for a single act, the State is not restricted to one punishment when the acts are separate and distinct. Accordingly, the convictions for rape and burglary are affirmed. The conviction for aggravated battery is reversed.

Judgment affirmed in part and reversed in part.

BURKE, P. J. and LYONS, J., concur.