611 P.2d 1137 (1980)
Kurk Kendall JOHNSON, Appellant,
v.
The STATE of Oklahoma, Appellee.
No. F-78-516.
Court of Criminal Appeals of Oklahoma.
May 21, 1980.
Bill L. Heskett, Heskett, Heskett, Daniel & Esser, Pawhuska, for appellant.
Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty., Gen., Timothy S. Frets, Legal Intern, for appellee.

*1139 OPINION
CORNISH, Presiding Judge:
The appellant was arrested on March 31, 1975, for the kidnapping of Earl Edward Bell. The authorities later discovered that Bell had been murdered. Because it appeared that the abduction occurred in Tulsa County, the appellant was charged in the Tulsa County District Court, Case No. CRF-75-690, with the crime of Kidnapping for the Purpose of Extortion. He was also charged with the crime of First Degree Murder in the District Court of Osage County, Case No. CRF-75-294, where the body was found.
Preliminary hearings were held and the appellant was bound over on both charges. On September 3, 1975, the appellant moved for a continuance of the murder trial in Osage County until after the conclusion of the Tulsa County trial on the kidnapping charge. The motion was granted. On September 5, 1975, the appellant was convicted by a Tulsa County District Court jury of Kidnapping for the Purpose of Extortion. He was sentenced to sixty (60) years' confinement. On appeal this Court affirmed the conviction. See Johnson v. State, Okl. Cr., 554 P.2d 51 (1976), cert. denied, 429 U.S. 943, 97 S.Ct. 364, 50 L.Ed.2d 314 (1976). Thereafter, the appellant was convicted of Murder in the Second Degree in the District Court of Osage County. Punishment was fixed at ten (10) years to like imprisonment.

I
In this appeal of his murder conviction, the appellant raises the issue of double jeopardy. He argues that the murder and the kidnapping were parts of a single criminal episode and that, therefore, the kidnapping conviction barred the murder trial.

A
The double jeopardy issue was first presented to the Osage County District Court on December 8, 1975. At that time the appellant entered a plea of double jeopardy to the first degree murder charge and filed a motion to strike all references to the crime of kidnapping from the information for first degree murder. The motion was denied. The appellant then petitioned this Court for a writ of mandamus ordering the Osage County District Court, to grant the motion to strike. This Court, in a per curiam opinion, denied the writ, stating:
"... No former jeopardy claim is sustainable as Murder in the First Degree is a separate and distinct offense protecting a different societal interest than Kidnapping for the Purpose of Extortion. Williams v. State, Okl.Cr., 321 P.2d 990 (1957), Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959)." Johnson v. Hampton, Okl.Cr., 564 P.2d 641 (1977), 11 A.L.R.3d 840 (Supp. 1979).[1]
The United States Supreme Court granted certiorari, vacated this Court's order denying the writ of mandamus, and remanded for further consideration with particular attention to Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); and Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). See Johnson v. Hampton, 434 U.S. 947, 98 S.Ct. 471, 54 L.Ed.2d 307 (1977).
On remand this Court held that the crime of first degree murder, as charged, necessarily included the lesser offense of kidnapping for the purpose of extortion. We prohibited the trial of the appellant as originally charged, but further stated:

*1140 "This order is made without prejudice to the trial of the said Kurk Kendall Johnson on any charge of homicide which the facts and justice may warrant, not inconsistent with the views expressed by the Supreme Court of the United States in Brown v. Ohio, and Harris v. Oklahoma, supra." Johnson v. Hampton, Okl.Cr., 572 P.2d 1301 (1978).
Subsequently, over the appellant's renewed plea of double jeopardy, he was convicted of the crime of Murder in the Second Degree.

B
The first assertion of error is the trial court's denial of the appellant's renewed motion to dismiss based on the plea of double jeopardy. The appellant urges us to apply the rule sometimes referred to as the "same transaction test." Under that rule a person cannot be held to answer for separate crimes at consecutive trials when the separate crimes were parts of a single criminal episode.
Generally, as noted in Gowler v. State, Okl.Cr., 589 P.2d 682 (1979), in determining the viability of a double jeopardy claim, the courts have utilized two tests referred to as (1) the "same evidence test" and (2) the "same transaction test," or a variation of the two. The "same evidence test" was initially employed in the English case of Rex v. Vandercomb and Abbott, 2 Leach 707, 168 Eng.Rep. 455 (1796). Morey v. Commonwealth, 108 Mass. 433 (1871), stated the rule in the first case to apply the rule in this county:
"A conviction or acquittal upon one indictment is no bar to a subsequent conviction or sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other."
Traditionally, the test employed to determine whether a person has been placed in jeopardy twice for a single offense has been to ask whether each of the offenses charged requires proof of an additional fact that is not necessary to the other. Thus, a single act may be an offense against two statutes. If each statute requires proof of an additional fact which the other does not, neither multiple prosecutions nor multiple punishments are barred by the prohibition against double jeopardy, even though each offense may arise from the same act or criminal episode. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); Collins v. State, 70 Okl.Cr. 340, 106 P.2d 273 (1940).
We find no consistent solution to the problem in examining prior cases from this Court. The same is true when we look to other jurisdictions. The United States Supreme Court has not said any one test is required by the Fifth Amendment.
Extensive research on this question indicates that the "same evidence test" is utilized by a majority of state and federal courts.[2] However, the problem is that with the proliferation of separately defined substantive crimes by the state legislatures the number of substantive offenses that may arise from a single criminal transaction has increased markedly. Thus, mechanical application of the "same evidence test" results in a decrease in the double jeopardy protection.
Critics of the same evidence test include in their ranks current members of the United States Supreme Court. In Ashe v. Swenson, 397 U.S. 436, 451, 90 S.Ct. 1189, 1198, 25 L.Ed.2d 469 (1970), Justice Brennan, in a separate opinion in which Justices Douglas and Marshall joined, made a scathing attack upon the same evidence test, finding that it "virtually annual the constitutional guarantee." He further said:
"... The `same evidence' test permits multiple prosecutions where a single transaction is divisible into chronologically discrete crimes... . Given the tendency of modern criminal legislation to divide the phases of a criminal transaction into numerous separate crimes, the opportunities for multiple prosecutions for an essentially unitary criminal episode are frightening. And given our tradition *1141 of virtually unreviewable prosecutorial discretion concerning the initiation and scope of a criminal prosecution, the potentialities for abuse inherent in the `same evidence' test are simply intolerable." (Citations omitted, footnotes omitted)
Other critics and modern writers maintain that the proper test to determine whether a person has been twice placed in jeopardy for a single offense is to ask whether the offenses charged were parts of the same criminal act, occurrence, episode or transaction.[3] If the answer is in the affirmative, then multiple prosecutions or punishments should be barred by the Double Jeopardy Clause. It is urged that the "same transaction test," by consolidating in one lawsuit all issues arising out of a single transaction, best promotes justice, economy and convenience.
The "same transaction test" has been adopted in some states by statute.[4] A few states have adopted the test by court decision.[5] It is also interesting to note that in England, where the "same evidence test" derived, the House of Lords indicated in 1964 that joinder of offenses arising out of the same transaction would be required in the future. Connelly v. Director of Public Prosecutions, A.C. 1254 (1964).
We would also point out that the "same transaction test" as viewed by Justice Brennan does not necessarily preclude a defendant from being convicted and punished for each offense joined. Abbate v. United States, 359 U.S. 187, 198, 79 S.Ct. 666, 672, 3 L.Ed.2d 729 (1959). Thus, it is possible to apply the "same transaction test" to determine when offenses should be joined, yet apply the "same evidence test" to determine whether the defendant can be subjected to separate convictions and punishments for the offenses joined. Commonwealth v. Campana, 452 Pa. 233, n. 5, 304 A.2d 432, n. 5 (1973).
Utilizing this test, this Court has held that separate crimes were in fact committed when two or more crimes were committed within the same brief span of time. Starnes v. State, Okl.Cr., 507 P.2d 920 (1973). Also, where crimes against separate and distinct persons were involved, we have held that, even though the crimes were a part of one criminal episode and were similar in nature, prosecution for each separate offense was not barred. Jennings v. State, Okl.Cr., 506 P.2d 931 (1973).

C
Much of the confusion surrounding the double jeopardy concept arises from the injustice of applying either test, to the exclusion of the other, in all cases. In this regard, it must be recognized that the Double Jeopardy Clauses of our State and Federal Constitutions are intended to protect against two distinct abuses. The first is requiring an accused to endure a series of trials where the same offense is charged; the second of these is the infliction of multiple punishments for a single offense. Green v. United State, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). A clear understanding of these distinct functions of the Double Jeopardy Doctrine makes clear the undesirability of adopting either the "same evidence test" or the "same transaction test" to the exclusion of the other. An analysis of past decisions of this Court reveal what we believe to be a proper working relationship between the two tests.
In the case of Starnes v. State, supra, the defendant was charged with robbery by force and attempted rape, with both offenses arising out of one criminal episode. He pleaded guilty to both charges, and concurrent sentences were imposed. On appeal, *1142 the defendant contended that the offenses arose out of the same event and that, therefore, it was error to convict the defendant of two separate offenses. The aspect of double jeopardy involved in Starnes was the protection against multiple punishments for a single offense. In upholding the imposition of separate punishments, this Court employed the "same evidence test," finding that the robbery and the attempted rape were two separate and distinct offenses, consisting of different elements. Application of the "same evidence test" under the facts of Starnes does not, however, necessarily imply that the "same transaction test" cannot be applied to other factual circumstances.
In Lawson v. State, Okl.Cr., 484 P.2d 900 (1971), the defendant broke into the victim's home with the intent to commit larceny. When confronted inside the home, he robbed the victim at gunpoint. The defendant was tried and convicted of armed robbery and was later convicted of burglary. On appeal the burglary convicted was reversed. The Court held that the same evidence was used in both trials. In ruling that there could not be separate trials for the burglary and the robbery, this Court employed the "same transaction test" to determine that the defendant had been tried twice for a single offense.
The conclusion to be reached after a careful analysis of Starnes and Lawson is that this Court has not accepted either the "same evidence test" or the "same transaction test" exclusively. Rather, recognizing the distinct functions of the Double Jeopardy Doctrine, this Court has adopted the test that would most advance the interests of justice in each particular case.
Following this view, we have held that where a defendant robbed a drugstore, taking money and narcotics, and was arrested four hours later in possession of narcotics, consecutive trials and convictions for armed robbery and possession of narcotics were not barred by the Double Jeopardy Doctrine. Ryan v. State, Okl.Cr., 473 P.2d 322 (1970). In a special concurrence, it was emphasized that the distinguishing features in the case were the time and location of the two offenses, the implication being that had the narcotics offense not been carried over to a distant time and place the result would have been different. Compare Hochderffer v. State, 34 Okl.Cr., 215, 245 P. 902 (1926), where the elements of time and location were the same. On the other hand, where two defendants kidnapped the victim and, with a third defendant, then committed rape of the same victim, we found that the act of kidnapping the victim was but a part of the force requisite to the greater offense of rape. We held that the defendants could not be punished for both kidnapping and rape, which was one transaction. Brumbelow v. State, Okl.Cr., 488 P.2d 1298 (1971).
Perhaps some confusion has resulted from our opinion in Smith v. State, Okl.Cr., 486 P.2d 770 (1971). There, the defendant was charged with robbing a taxi driver at knife point, taking the victim's money after stabbing him once in the neck and twice in the chest. The defendant was first convicted of assault and battery with a deadly weapon with intent to kill, and that conviction was affirmed. See Smith v. State, Okl.Cr., 481 P.2d 804 (1971). At a later trial, the defendant was convicted of robbery with a dangerous weapon, and on appeal, he raised a double jeopardy question. A strict application of the "same evidence test" would not have required a reversal because the intent to kill is not an element of robbery and, conversely, assault with intent to kill does not require the taking of property from the victim. However, this Court reversed the robbery conviction, holding that separate trials could not be held on the robbery and assault charges.
Smith v. State, supra, could be read to imply that 21 O.S. 1971, § 11[6] mandates *1143 application of the "same transaction test" exclusively when construing Art. 2, § 21,[7] of the Oklahoma Constitution. We intended no such implication, and the cases cited do not support that conclusion. In Smith this Court cited State v. Mendoza, 107 Ariz. 51, 481 P.2d 844 (1971), in which the defendant committed a forcible rape after threatening the victim with a knife. At a single trial, the defendant was convicted of the crimes of assault with a deadly weapon and first degree rape. The Arizona Supreme Court affirmed the rape conviction and reversed the conviction for assault with a deadly weapon. In so doing, the Court stated:
"In a recent opinion of this Court, wherein the defendant was charged with attempted kidnapping while armed with a gun, Count I, and assault with a deadly weapon or instrument, to wit: a gun, Count II, both offenses or counts arising out of the same act, our Court stated that the `practical test is to eliminate the elements in one charge and determine whether the facts left would support the other charge.' State v. Mitchell, 106 Ariz, 492, 478 P.2d 517, 520 (1970). In the instant case, it is clear that the element of force or violence necessary to the crime of 1st degree rape was supplied by the fear of personal violence induced by the defendant's usage of a deadly weapon, to wit: the knife, and without such usage that the element of 1st degree rape would not exist...." (Citation omitted)
* * * * * *
"We do not by this opinion hold that there cannot be fact situations wherein a person may be convicted of both assault and 1st degree rape. That determination must be made on a case to case basis. We do hold that under the facts in this case the two convictions and sentences cannot stand together... ." (Citations omitted).
From the language, it is clear that the Arizona Court utilized the "same evidence test" in deciding the double jeopardy issue.
In People v. Ridley, 63 Cal.2d 671, 47 Cal. Rptr. 796, 408 P.2d 124 (1965), also cited in Smith v. State, supra, the defendant was charged with assault with a deadly weapon with intent to commit murder and first degree robbery. At a single trial, the defendant was convicted of both offenses. Use of the "same evidence test" resulted in a finding that the assault was the means of perpetrating the robbery and that both offenses were incident to one objective, robbery. Therefore, the defendant could be punished for any one of the offenses, but not for more than one. There was only a single offense, and the defendant could not be tried twice for it. In re Henry, 65 Cal.2d 330, 54 Cal.Rptr, 633, 420 P.2d 97 (1966), presented the Court with the same issue, and the same rationale was employed in an opinion by Chief Justice Traynor.
Both Arizona and California have statutes similar to 21 O.S. 1971, § 11. See Ariz. Rev.Stats., § 13-1641, and the California Penal Code, § 654. See also Wildman v. State, 42 Ala.App. 357, 165 So.2d 396 (1963).
While a few states have adopted the same transaction standard as a matter of state law, it has not been applied as a federal constitutional requirement. As noted in Cousins v. State, 277 Md. 383, 354 *1144 A.2d 825 (1976), the majority of states have not adopted the "same transaction test" but have continued to apply the "same evidence test" for defining whether two offenses are the same for double jeopardy purposes. Cited therein as rejecting the "same transaction test" is Kupiec v. State, Okl.Cr., 493 P.2d 444, 446 (1972).
In Kupiec the defendant forced his way into a house, took various items of personal property, and raped one of the residents. There were separate trials for armed robbery and rape, with evidence of both crimes being presented at both trials. The defendant's double jeopardy argument was rejected, using a strict "same evidence" approach. The Court said that the armed robbery and the rape were clearly separate and distinct crimes and that the proof required for each was quite dissimilar. The "evidence of other crimes" issue was also raised, but it was treated by the Court's saying that evidence of other crimes was properly admitted in both cases as part of the res gestae.

D
In reaching what we believe to be a reasonable approach to this complex issue, we note that the cases raising double jeopardy claims come within a few broad categories. In one category, are those cases in which, in a single trial, a defendant is convicted of two offenses arising from the same general criminal episode. In such cases we have generally held that the interests of justice are best served by application of the "same evidence test" to determine the propriety of multiple charges. In another group are those cases in which a defendant is convicted of two crimes, one of which is, as a matter of law, a necessary element of the other. Here, whether there was one trial or two, application of either test will result in one conviction being vacated.
The preceding categories are the black and white groups. In the gray category are those cases in which there are multiple trials for crimes which, while distinct in law, constitute parts of a single criminal episode. In dealing with these cases, an appellate court must consider both aspects of double jeopardy discussed above: More than one trial for a single offense and more than one punishment for a single offense. We believe that the protection against multiplicity of trials is best advanced by application of the "same transaction test." However, the protection against multiplicity of punishments is a separate and independent question; and even where the "same transaction test" mandates a single trial, application of the "same evidence test" could result in a holding that a defendant could be punished separately for each of the offenses involved. In this connection, we again remind prosecutors of the special concurring opinion attached to Dodson v. State, Okl.Cr., 562 P.2d 916 (1977), in which Judge Brett explained that where a series of acts is involved, an accused can be charged with several counts in a single information.[8] It should not be inferred that because we treat the double jeopardy issue in one case by using one test this Court will not apply the other test in appropriate cases.
By this opinion we do not, in the words of Mr. Chief Justice Burger, find ourselves "endowed-with a perception all our predecessors lacked and in an area of the law encountering no new facts." See the dissenting opinion by Burger, C.J., in Ashe v. Swenson, supra, 397 U.S. at 464, 90 S.Ct. at 1204. Instead, we merely follow the collective wisdom of this Court's prior decisions and elect that course which allows this Court to utilize the necessary tools to accomplish the task before it. In taking this course, we do nothing more than elevate the distinct purposes of the Double Jeopardy Doctrine to the equal dignity and reverence each deserves.
This reasoning leads us to conclude that while the appellant herein could be punished separately for Murder in the Second Degree and Kidnapping for the Purpose *1145 of Extortion, both crimes should have been adjudicated in a single trial. The murder charge could not have been tried in Tulsa County because of a lack of venue; however, because kidnapping is a continuing crime, both charges could have been, and should have been, tried in Osage County.[9]
On the other hand, public interest in the effective administration of the criminal justice system precludes a defendant from waiting until a criminal proceeding is ended to begin asserting alleged denials of constitutional protections. There are, of course, some constitutional rights which are never finally waived. Lack of jurisdiction, for instance, can be raised at any time. This is not true of the double jeopardy protection. See Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). Although both the murder and the kidnapping cases were in process at the same time, the appellant did not raise the double jeopardy issue until the case in Tulsa County (kidnapping charge) had been completed. In fact, he succeeded in postponing the Osage County case (murder charge) until the other one was over. Had the issue been raised in the beginning, the kidnapping charge could have been dismissed in Tulsa and filed in Osage County, so that the two charges could have been tried together; whereas enforcement of the double jeopardy protection in accordance with the appellant's strategy would have barred prosecution of the appellant on one of the charges. This Court, accordingly, holds that the appellant waived his double jeopardy protection.

II
The appellant next asserts that the trial court erred in overruling defense counsel's motion to suppress and his demurrer to the evidence. He asserts the verdict is unsupported by the evidence. As each item of evidence was introduced at trial the defense attorney responded, "No objection." The failure to object to evidence admitted at trial is a waiver of any error that such admission might have constituted. Box v. State, Okl.Cr., 541 P.2d 262 (1975). The logical implication of the failure to object is that the appellant acquiesced in the court's ruling on the motion to suppress. It follows that the appellant's assertion is also without merit because evidence admitted at trial without objection may be properly considered by the jury.

III
We next consider the allegation that the verdict forms were defective. The appellant insists that the usual verdict forms slur over the State's burden of proof; instead of forms for finding an accused "guilty" or "not guilty," he proposes that the forms should read "guilty beyond a reasonable doubt" and "there is a reasonable doubt as to guilt." In his instructions to the jury, the judge specified the burden of proof numerous times; and he expressly told the jury that if they could not find beyond a reasonable doubt that the appellant was guilty, then they were obliged to find him not guilty. The appellant's argument is unsound.

IV
The final assertion of error is that the prosecutor's closing argument was improper. Specifically, the appellant contends that in referring to the testimony of the appellant's brother relative to a telephone conversation between the appellant and his brother, the prosecutor recounted, "Find Duck. Tell him if he is any kind of cousin he will find that body and get rid of it because if he don't I'll get the electric chair." The prosecutor then continued, "They found the body, and after you have seen the evidence in this case, you may wish that the rest of his statement was true there. He said, `If they don't find the body I'll get the electric chair.' If there is any person whoever deserved it, he is sitting right in front of you, right there."
*1146 The appellant contends that this reference to the death penalty during closing argument was so prejudicial to the appellant as to require a reversal. We do not agree. The trial court properly instructed the jury with regard to the sentence to be imposed upon a conviction for second degree murder. In view of the proper instruction of the court, the complained of error in the prosecutor's closing argument, if error at all, did not violate a substantial right of the accused.
The judgment and sentence is AFFIRMED.
BRETT, J., concurs.
BUSSEY, J., specially concurs.
BUSSEY, J., specially concurring:
The offenses of kidnapping and murder in the second degree are separate and distinct crimes under the facts of this case. Cf. 21 O.S.Supp. 1976, § 701.8, ¶ 2, and Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). A conviction for one should not bar the prosecution and conviction of the other. In summary, each of these charges requires the proof of at least one and, in fact, several facts or elements that proof of the other does not so require. The Double Jeopardy Clauses of the state and federal constitutions are not offended by separate prosecution and punishment here. See Clay v. State, Okl.Cr., 593 P.2d 509 (1979), and Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).
NOTES
[1] For cases from other jurisdictions, see Annot. "Earlier Prosecution for Offenses During which Homicide was Committed as Bar to Prosecution for Homicide." 11 A.L.R.3d 834 (1967).
[2] Twice in Jeopardy, 75 Yale L.J. 262 (1965).
[3] Note, Criminal Law: The Same Offense in Oklahoma  Now You See it, Now You Don't 28 Okl.L.Rev. 131 (1975); Commonwealth v. Campana, 452 Pa. 233, 304 A.2d 432, 435, 436 (1973); State v. Brown, 262 Or. 442, 497 P.2d 1191 (1972); Noe, Criminal Law  Double Jeopardy  should "Offense" be Defined in Terms of Substantive Law?, 38 Mo.L.Rev. 528, 530 (1973); Note, The Protection Against Multiple Trials, 11 Stan.L.Rev. 735 (1958).
[4] See N.Y.Crim.Proc.L. 40.20(2); 40 Minn. Stats.Anno. 609.035.
[5] State v. Ahuna, 52 Haw. 321, 474 P.2d 704 (1970).
[6] Title 21 O.S. 1971, § 11, provides:

"If there be in any other chapter of the laws of this state a provision making any specific act or omission criminal and providing the punishment therefor, and there be in this penal code any provision or section making the same act or omission a criminal offense or prescribing the punishment therefor, that offense and the punishment thereof, shall be governed by the special provisions of this penal code. But an act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, except that in cases specified in §§ 51 and 54, the punishments therein prescribed are substituted for those prescribed for a first offense, but in no case can [it] be punished under more than one; and an acquittal or conviction and sentence under either one, bars the prosecution for the same act or omission under any other." (Footnote omitted)
[7] Art. 2, § 21, of the Oklahoma Constitution, provides:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense."
[8] Further, pursuant to 22 O.S. 1971, § 439, if it appears that a defendant or the State is prejudiced by joinder of offenses in an indictment or information, the court shall order an election or separate trial of counts or provide whatever other relief justice requires.
[9] Or, had there been no kidnapping charge in another county, the Osage County District Attorney could have forgone the kidnapping charge and filed a single charge of murder.