296 S.E.2d 37

**STATE of West Virginia**

v.

**Charles William PANCAKE.**

**No. 15417.**

Supreme Court of Appeals of West Virginia.

Sept. 21, 1982.

Mark D. Nigh, Philippi, for appellant.

Chauncey H. Browning, Atty. Gen., and S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

HARSHBARGER, Justice:

Charles "Bill" Pancake appealed his Barbour County convictions for first-degree sexual assault upon his wife's sister, and burglary. The State charged Pancake with sexual intercourse by "forcible compulsion" as defined in Code, 61–8B–3, that is, by threat or intimidation causing his victim to be fearful of bodily injury.

On December 7, 1980, at about 7:00 A.M., Pancake broke the door glass of Ms. M.'s mobile home, entered, and went to her bedroom. She saw him drunkenly approaching her room through a hallway and unsuccessfully tried to convince him to leave. Then, fearing bodily harm, she submitted to his sexual advances.

During this encounter, which continued for about two hours, there were interludes during which each used her bathroom facility. She did not scream or attempt to leave, and admitted to having an orgasm.

Finally, she told him she had to go to church, and he left, after helping her pick up the broken glass from her floor and apologizing for breaking it. Ms. M. went to church with her boyfriend, then visited another friend, and about 10:00 o'clock that evening reported the incident to the police.

Pancake tried to prove consent by his testimony that she *did* consent, and by inferences from the length of time they spent together, by her orgasm, her failure to scream or leave, the length of time between the event and her police report, and by evidence that they had enjoyed sexual intercourse with each other once before.

## I.

During M.'s testimony the court held an *in camera* hearing, required by Code, 61–8B–12(a),[1] on the relevancy of evidence about her prior sexual encounter with defendant. She admitted that more than a year and a half before he raped her, she and Pancake had sexual intercourse. Defense counsel strongly argued that this showed a pattern of consensual sexual behavior between the two, but the court decided this event was too remote to be relevant, and therefore evidence about it was inadmissible.

Pancake testified, and during his direct examination the court held another *in camera* hearing about the admissibility of evidence about his former sexual relations with M. It ruled that Pancake could testify about whether, when and where he had had any sexual relations with Ms. M. His testimony (that in the spring or summer of 1979 they had sexual relations once) paralleled M.'s "inadmissible" *in camera* testimony. And so the result was that Pancake was allowed to testify about that event, and did; but Ms. M. was protected from being examined about the same event.

**1.** W.Va.Code, 61–8B–12(a):

"In any prosecution under this article in which the victim's lack of consent is based solely on his incapacity to consent because he was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct

■ Our rape shield law permits admission of "specific instances of the victim's prior sexual conduct with defendant ... on the issue of consent; provided that such evidence heard first out of the presence of the jury is found by the judge to be relevant." Code, 61–8B–12(a). This law survived constitutional attack on the confrontation issue in *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979), although *Green*'s attention was to subsection (b) about a victim's sexual conduct with persons *other* than defendant. *See also* Syllabus Point 1, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982).

We discussed the rationale for our rape shield law in *Green*. If evidence about a victim's other sexual activity is found to be irrelevant, it is inadmissible. *Accord*, Syllabus Point 1, *Smith v. Edward M. Rude Carrier Corp.*, 151 W.Va. 322, 151 S.E.2d 738 (1966). Defendant, therefore, would have no right, constitutional or otherwise, to cross-examine about it. *Accord, People v. McKenna*, 196 Colo. 367, 585 P.2d 275, 1 A.L.R.4th 273 (1978); *People v. Cornes*, 80 Ill.App.3d 166, 35 Ill.Dec. 818, 399 N.E.2d 1346 (1980); *State v. Davis*, Iowa, 269 N.W.2d 434 (1978); *Johnston v. State*, Miss., 376 So.2d 1343 (1979); *State v. Herrera*, 92 N.M. 7, 582 P.2d 384, *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). *See* Fed.R.Evid. 402. *See generally*, Annot., Constitutionality of "rape shield" statute restricting use of evidence of victim's sexual experiences, 1 A.L.R.4th 283 (1980 and Supp.). The assessment of relevance of any evidence is a trial judge's responsibility. *See State v. Wood*, 167 W.Va. 700, 280 S.E.2d 309 (1981); *State v. Gangwer*, 168 W.Va. 190, 283 S.E.2d 839 (1981); *State v. Cox*, 162 W.Va. 915, 253 S.E.2d 517 (1979); *Ward v. Smith*, 140 W.Va. 791, 86 S.E.2d 539 (1955). *Accord, State v. Howard*, Utah, 544 P.2d 466, 470 (1975). *See also Turley v. State*, Ala.App., 356 So.2d 1238

shall not be admissible. In any other prosecution under this article, *evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, that such evidence heard first out of the presence of the jury is found by the judge to be relevant.*"

(1978); *In Interest of Nichols*, 2 Kan. App.2d 431, 580 P.2d 1370 (1978); *People v. Hastings*, 72 Ill.App.3d 816, 28 Ill.Dec. 683, 390 N.E.2d 1273, 1277 (1979); *People v. Dery*, 74 Ill.App.2d 112, 219 N.E.2d 536, 540 (1966); Annot., Modern Status of Admissibility, In Forcible Rape Prosecution, of Complainant's Prior Sexual Acts, 94 A.L. R.3d 257, 284, § 9 (1979 and Supp.). *But see* for older cases cited therein, Annot., Propriety of Cross-Examining Witness As To Illicit Relations With Defendant in Criminal Case, 25 A.L.R.3d 537 (1969). A woman's prior consent to sexual intercourse with a man is not probative about her consent years later. Note, If She Consented Once, She Consented Again—A Legal Fallacy In Forcible Rape Cases, 10 Val.U.L. Rev. 127 (1976).

The problem here arose because the trial court permitted Pancake to testify about their former alliance, but did not permit M. to be cross-examined on it. If it were irrelevant one time, it did not acquire relevance later when introduced for the same purpose. It was not error to exclude it in the first place, and its later admission was inconsistent, but we cannot see how defendant was prejudiced or harmed. He eventually got this fact into evidence, although the court could properly have excluded it. She never denied it, so cross-examination for impeachment was unnecessary.

"A verdict of guilty in a criminal case will not be reversed by this Court because of error committed by the trial court, unless the error is prejudicial to the accused (citation omitted)," Syllabus Point 2, *State v. Blaney*, 168 W.Va. 462, 284 S.E.2d 920 (1981).

## II.

"Forcible compulsion" necessary to a first-degree sexual assault conviction is defined at Code, 61–8B–1(1)(a) and (b):

(a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or

(b) Threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person or in fear that he or another person will be kidnapped.

M. testified that she was afraid Pancake would hurt her. She asserted he warned her that he did not want to "have to hurt her." This he denied. To substantiate the basis for her fear, she stated:

A. Well, he had kicked the door in on my apartment that I had at the Small Mall. And he had kicked my car and tried to break the mirror off on the inside and bent the door on it and I had seen him hit my sister.

[Counsel]: Objection Your Honor.

THE COURT: Over-ruled, this is to show cause or reason why she would have fear of this Defendant—objection is over-ruled.

A. I'd seen him put a cigarette out on her face and there was a dent in the hood of my car where he hit it with a pool stick when she took it out one night.

Q. Has the Defendant ever threatened you?

A. Yes.

Pancake argued that this evidence of collateral crimes and violent behavior was inadmissible because it did not fall within any exception in *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). Our *Thomas* rule permits evidence of other crimes to be admitted if it tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan, or (5) the identity of an accused. These categories are not exhaustive. Evidence of other misconduct may be admitted to prove any "relevant fact other than criminal disposition." Cleckley, Handbook on Evidence for West Virginia Lawyers, p. 253. *See State v. Haverty*, 165 W.Va. 164, 267 S.E.2d 727, 734 (1980). Evidence that a defendant committed violent or turbulent acts toward a rape victim or toward others about which the victim was aware, is relevant to establish the fear that is a major element of proof of first-degree sexual assault. Code, 61–8B–1(1)(b).

Admission of this evidence, discretionary with a trial court, was not error. *State v. Nicholson*, 162 W.Va. 750, 252 S.E.2d 894 (1979), *overruled on other grounds, State*

*v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980). Defendant would have been entitled to a cautionary instruction, but did not ask for one. *State v. Ramey,* 158 W.Va. 541, 212 S.E.2d 737 (1975), *overruled on other point, State v. McAboy,* 160 W.Va. 497, 236 S.E.2d 431 (1977); *State v. Gargiliana,* 138 W.Va. 376, 76 S.E.2d 265 (1953).

### III.

■ Pancake attempted to elicit testimony from Dr. Barbie Taylor, an expert on female sexuality, about the unlikelihood of a woman having an orgasm while she was having a fearful sexual experience. After a hearing in chambers, the court ruled the evidence inadmissible because Dr. Taylor had not examined this victim and could not testify with medical certainty. We reviewed the vouched record and agree with the trial court that Dr. Taylor's testimony would have consisted of unsubstantiated generalities, and that there was no abuse of discretion in excluding her testimony. *Bennett v. Walton,* 170 W.Va. 283, 294 S.E.2d 85 (1982).

### IV.

■ Pancake's most complicated error assignment is that two sentences from a single criminal transaction—he was convicted and sentenced for both burglary and rape—violate our State proscription against multiple punishments for the same offense.[2] W.Va. Const. art. III, § 5; *State ex rel. Dowdy v. Robinson,* 163 W.Va. 154, 257 S.E.2d 167 (1979), *overruled on other grounds, State v. Adkins,* 170 W.Va. 46, 289 S.E.2d 720 (1982); *State ex rel. John-*

*son v. Hamilton,* 164 W.Va. 682, 266 S.E.2d 125 (1980), *modified, State ex rel. Watson v. Ferguson,* 166 W.Va. 337, 274 S.E.2d 440 (1980).

Double jeopardy laws, federal or state, "can hardly be characterized as models of consistency and clarity." *Burks v. United States,* 437 U.S. 1, 9, 98 S.Ct. 2141, 2146, 57 L.Ed.2d 1, 8 (1978). One of the problems is that they embrace three distinct, separate kinds of double jeopardy: serial prosecutions for the same offense; interrupted trials; and multiple punishments for the same offense. Various tests have developed for each of those three categories of double jeopardy. Here, we must work only with the "multiple punishments for the same offense" category.

The United States Supreme Court has explained the double jeopardy clause prohibition against multiple punishments for the same offense. Its Fifth Amendment multiple punishments analysis prohibits a court from subjecting a defendant to double punishment for one legislatively-defined offense[3] or from punishing for both greater and lesser-included offenses.[4]

We have generally followed that model. *State v. Barnett,* 168 W.Va. 361, 284 S.E.2d 622 (1981) (delivery of two controlled substances to one person was one legislatively-defined offense); *State ex rel. Hall v. Strickler,* 168 W.Va. 496, 285 S.E.2d 143 (1981) (armed robbery is a lesser-included offense of felony murder).[5] Most commentators understand the Supreme Court rules as we have explained them. S. Mead, Double Jeopardy Protection—Illusion or Reality?, 13 Ind.L.Rev. 863 (1980); Schwartz, Multiple Punishment

---

2. W.Va.Code, 61–3–11(a):
   "Burglary shall be a felony and any person convicted thereof shall be confined in the penitentiary not less than one nor more than fifteen years. If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a felony or any larceny therein, he shall be deemed guilty of burglary."

3. *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

4. *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

5. *State ex rel. Hall v. Strickler, supra,* was a multiple prosecution case but it shows our use of lesser-included offense concepts applicable to multiple punishments.

for the "Same Offense": Michigan Grapples With the Definitional Problem, 25 Wayne L.Rev. 825 (1979); Western and Drubel, Toward a General Theory of Double Jeopardy, 1978 The Supreme Court Review 81; Comment, Twice in Jeopardy, 75 Yale L.J. 262 (1965); Comment, Cumulative Sentences for One Criminal Transaction Under the Double Jeopardy Clause: *Whalen v. United States*, 66 Cornell L.Rev. 819 (1981); Comment, Criminal Law—Double Jeopardy—Consecutive Sentencing, 11 Memphis St.U.L.Rev. 122 (1980); Comment, Two-tiered Test for Double Jeopardy Analysis in New Mexico, 10 N.M.L.Rev. 195 (1979–80); Note, The Impact of Expanded Rules for Determining What Constitutes the "Same Offense" for Double Jeopardy Purposes: *Illinois v. Vitale*, 1980 Brigham Young U.L.Rev. 948; Note, Double Jeopardy: An Illusive Expansion of a Constitutional Protection, 14 Ga.L.Rev. 761 (1980); Note, Criminal Procedure: The Same Offense Revisited: *Dodson v. State*, 33 Okla.L.Rev. 139 (1980); Note, Consecutive Sentences in Single Prosecutions: Judicial Multiplication of Statutory Penalties, 67 Yale L. Journal 916 (1958).

Federal double jeopardy multiple punishment rules are not overtly offended by sentences for both rape and burglary. Our legislature has defined crimes in categories: burglary is designated a crime against habitation with a specified punishment, and rape is a crime against a person, and has a different punishment. *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), and *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), instruct that we must discern whether our Legislature *intended* to create two offenses. A "legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense ...." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 193–4 (1977). Even applying the federal lenity rule about

construction of criminal statutes, there is no statutory ambiguity that merges these crimes. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Simpson v. United States, supra; Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955).

■ *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), ruled: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

Using *Blockburger*'s same evidence test to see if we have a greater and lesser offense, we find that proving each crime committed by Pancake requires proof of facts that the other does not, e.g., breaking and entering a dwelling is an element to be proved for a burglary conviction; and forcible sexual violation of a person must be proved for rape. Rape is not a lesser-included offense of burglary; [6] nor vice versa.

We have surveyed how other state courts analyze this problem. Their approaches are frequently based on different considerations, and often with little citation, but most states find burglary and rape or any other felony committed inside the dwelling to be separate offenses, separately punishable by a same evidence *Blockburger*-like test. *Beckley v. State*, Ala.App., 357 So.2d 1022 (1978); *Hunter v. State*, Del., 430 A.2d 476 (1981) (first-degree assault and possession of a deadly weapon during commission of a felony); *Vincent v. State*, Del., 256 A.2d 268 (1969) (first-degree burglary and rape); *Groves v. State*, 152 Ga. App. 606, 263 S.E.2d 501 (1979) (burglary and rape); *Dutton v. Smart*, 222 Ga. 35, 148 S.E.2d 396 (1966) (burglary and assault with intent to rape); *State v. McCormick*, 100 Idaho 111, 594 P.2d 149 (1979) (burgla-

---

6. Our recent cases on lesser-included offenses for purposes of jury instructions include *State v. Horton*, 170 W.Va. 395, 294 S.E.2d 248 (1982);

*State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982); and *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1981).

ry and rape); *Daugherty v. State,* 102 Idaho 782, 640 P.2d 1183 (1982) (burglary and grand larceny); *People v. Weaver,* 93 Ill. App.2d 311, 236 N.E.2d 362 (1968) (aggravated battery and rape); *People v. Jones,* 6 Ill.App.3d 669, 286 N.E.2d 87 (1972) (aggravated kidnapping and rape); *Dragon v. State,* Ind., 383 N.E.2d 1046 (1979), *cert. denied,* 442 U.S. 912, 99 S.Ct. 2829, 61 L.Ed.2d 279 (kidnapping and rape); *Adams v. State,* Ind., 386 N.E.2d 657 (1979) (burglary, armed robbery, armed rape, armed sodomy); *Gibson v. Henderson,* 376 F.Supp. 1065 (1974) (applying Louisiana law—burglary and rape); *People v. Hughes,* 85 Mich.App. 674, 272 N.W.2d 567 (1978) (armed robbery and felony-firearm statute—look to legislative intent); *State v. Gant,* Minn., 305 N.W.2d 790 (1981) (burglary and rape; burglary anti-merger statute shows legislative intent); *Hughes v. State,* Miss., 401 So.2d 1100 (1981) (kidnapping and rape); *State v. Revelle,* 301 N.C. 153, 270 S.E.2d 476 (1980) (felonious larceny, armed robbery, burglary and rape); *Steele v. State,* Okl.Cr.App., 629 P.2d 1272 (1981) (rape and assault and battery with a deadly weapon); *Johnson v. State,* Okl.Cr. App., 611 P.2d 1137 (1980), *cert. denied,* 450 U.S. 1026, 101 S.Ct. 1734, 68 L.Ed.2d 221 (1981) (second-degree murder and kidnapping must be tried together but can be punished separately); *Harris v. State,* 206 Tenn. 276, 332 S.W.2d 675 (1960) (robbery and assault and battery with intent to rape); *State v. Hoyt,* 29 Wash.App. 372, 628 P.2d 515 (1981) (burglary and rape—burglary anti-merger statute).

*But see People v. McFarland,* 58 Cal.2d 748, 26 Cal.Rptr. 473, 376 P.2d 449 (1962) (burglary and larceny—only one sentence for most serious crime); *Trousdale v. State,* 287 So.2d 721 (Fla.Dist.Ct.App.1974) (burglary with intent to commit rape and assault can have only one sentence); *State v. Woolard,* 259 Or. 232, 485 P.2d 1194 (1970), *reh. denied* (burglary and larceny

can have only one sentence); Model Penal Code, § 221.1(3) (burglary and theft should have one punishment).

In *State ex rel. Dowdy v. Robinson,* 163 W.Va. 154, 257 S.E.2d 167 (1979), *overruled on other grounds, State v. Adkins,* W.Va., 289 S.E.2d 720 (1982), we found our State constitutional "same offense" language defined by a "same evidence" or "same transaction" test, depending upon which application is most favorable to a defendant. Syllabus Point 1, *Dowdy, supra.*[7] *Dowdy* was a multiple prosecution case.

■ *State ex rel. Johnson v. Hamilton,* 164 W.Va. 682, 266 S.E.2d 125 (1980). *modified, State ex rel. Watson v. Ferguson,* 166 W.Va. 337, 274 S.E.2d 440, (1980), determined that one trial with joinder of multiple offenses arising from the same criminal episode was constitutionally required by our double jeopardy provision. That joinder requirement did not prohibit separate punishments for separate offenses that had to be tried together:

Although under double jeopardy principles the proper procedure is a trial of all offenses arising out of the same "criminal transaction" jointly, separate punishments may be imposed for separate offenses arising out of a single criminal transaction.

Syllabus Point 3, *State ex rel. Johnson v. Hamilton, supra.*

Our Court, particularly Chief Justice Miller, had difficulty reconciling separate applications of the double jeopardy same offense clause to multiple trials and multiple punishments. We diminished the problem, in part, by lowering the unitary trial requirement from constitutional status to a procedural joinder rule pursuant to our inherent rule-making power. *State ex rel. Watson v. Ferguson,* 166 W.Va. 337, 274 S.E.2d 440, 444 (1980).[8] It is now in our criminal procedure rules. W.Va.R.Crim.P., Rule 8.

---

7. This dual approach to defining "same offense" was adopted in Oklahoma, *Johnson v. State,* Okl.Cr.App., 611 P.2d 1137 (1980), *cert. denied,* 450 U.S. 1026, 101 S.Ct. 1734, 68 L.Ed.2d 221 (1981).

8. Syllabus Point 2, *Gilkerson v. Lilly,* 169 W.Va. 412, 288 S.E.2d 164 (1982), found our "same transaction" test to be a procedural rule in furtherance of double jeopardy policy and not constitutionally mandated.

*Johnson* emphasized that it is not constitutionally offensive to require one trial but permit separate punishments. This is still our law even after *Watson* effectively removed constitutional considerations as bases for decisions about joinder of offenses arising from the same criminal episode.

*Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), held cumulative sentences to be improper for a rape and killing of one victim. The court focused on actual proof required at trial rather than required elements, those needed to be proven to obtain a conviction under each statute.[9] *See* Note, Twice in Jeopardy, *supra* at 269; Comment, 66 Cornell L.Rev. 819, *supra*. In *Whalen's* case the court determined he could not have been convicted of felony murder without proof of the rape. Rape provided the proof of intent to raise the crime to felony murder. The Supreme Court discerned legislative intent about permissible punishment from a District of Columbia statute, D.C.Code, § 23–112, that prohibits cumulative sentences unless the *Blockburger* test is met, i.e., each crime requires proof of a fact that the other does not. We do not have a specific statute to explain legislative intent, but even if the same rule applies because of our Fourteenth and Fifth Amendments, the crimes of rape and burglary each require proof of separate facts and, therefore, meet *Blockburger* criteria.

Pancake's double jeopardy protections were not violated by two convictions and two sentences.

## V.

■ Prior to trial Pancake filed a plea in abatement to void his indictment because the grand jury selection methodology was wrong. Code, 52–1–3 and 52–2–2 require that a county circuit court appoint two jury commissioners from opposite political parties. Only one of the two lawfully appointed Barbour County jury commissioners was present at the February term grand jury selection. If the presence of both commissioners is mandatory, the indictment is void. *State ex rel. Burgett v. Oakley*, 155 W.Va. 276, 184 S.E.2d 318 (1971); *State v. Howard*, 137 W.Va. 519, 73 S.E.2d 18 (1952). If directory, the defendant must show harm or prejudice. *State ex rel. Mynes v. Kessel*, 152 W.Va. 37, 158 S.E.2d 896 (1968); *State v. Nuckols*, 152 W.Va. 736, 166 S.E.2d 3 (1968).

■ The presence of two duly appointed commissioners *to prepare the jury list* is mandatory, but there was no allegation that the list was improperly compiled. All other steps set out in the statute are directory. *State v. Nuckols, supra; State ex rel. Mynes v. Kessel, supra; State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956). The random selection of ballots from a properly constituted grand jury list by one jury commissioner in the presence of the court's clerk substantially complied with the directory provisions of Code, 52–2–2. Pancake did not allege or demonstrate any prejudice. The indictment is good.

It should be emphasized that in holding that the grand jury which returned the indictment against the petitioner was a lawfully constituted grand jury and that the indictment was not vitiated by any irregularity in its selection, this Court does not overlook or sanction the neglect upon the part of the jury commissioners in failing to perform strictly, fully and promptly the duty imposed upon them by the statute. On the contrary their apparent indifference and their careless action are expressly disapproved. Extreme care should be exercised to comply strictly with all the requirements of the statute by all who are charged with that duty and even a technical or harmless

9. *See Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), where the court remanded for interpretation by state court of involuntary manslaughter with a motor vehicle and failing to reduce speed to see if *actual* proof at trial would be the same and, therefore, prevent two prosecutions. The inquiry specifically focused on the multiple prosecution facet of double jeopardy, rather than multiple punishment, but it indicated the court's shift from a statutorily *required* evidence approach to an *actual* evidence used at trial one. This was a 5–4 decision with strong dissent because multiple trials offended the principles of double jeopardy protection against harrassment, expense and ordeal.

disregard of such requirements should be scrupulously avoided.

*State ex rel. Mynes v. Kessel, supra,* 152 W.Va. at 51, 158 S.E.2d, at 905.

Affirmed.